THOMAS B. STOCKER, APPELLANT, V. NEMAHA VALLEY
DRAINAGE DISTRICT NO. 2, APPELLEE.

FILED NOVEMBER 13, 1915. No. 18315.

Eminent Domain: DRAINS: ASSESSMENT OF DAMAGES: SPECIAL BENEFITS.
In determining whether property not taken for the excavation of a
drainage ditch is damaged by the construction of the ditch, it is im-
proper to consider general benefits affecting the community. If the prop-
erty not taken is enhanced in value by reason of the construction of
the ditch, such increase in value is a special benefit as to the particular
property, and not a general benefit, notwithstanding the value of
other property within the drainage district is also enhanced by reason
of the improvement.

APPEAL from the district court for Nemaha county:
JOHN B. RAPER, JUDGE. *Affirmed.*

*T. R. P. Stocker,* for appellant.

*Kelligar & Ferneau, contra.*

LETTON, J.

This is an appeal from an assessment of damages in
condemnation proceedings brought for the location of a
drainage ditch. The plaintiff is the owner of a large tract
of land in the valley of the Nemaha river, a little over 300
acres of which is within the limits of the drainage district.
In the construction of the ditch it became necessary to
run the main channel and a lateral ditch through the
plaintiff's land. There was a general verdict and judg-
ment for plaintiff for $1,151.96. Plaintiff has appealed.
The jury made special findings of fact to the effect that
21.38 acres of land had actually been taken for the ditches,
that this land was worth $45 an acre, and that there were
no consequential damages to the land not taken. No com-
plaint is made as to the findings as to the number of acres
actually taken or the amount allowed as the value of the
same, but the appeal is concerned with the right to recover
for consequential damages to the remainder of the tract.

The first error assigned is that the court erroneously instructed the jury as to the measure of damages. Evidence with respect to the cost of bridges over the ditches had been received. Speaking of this evidence, the court said: "This evidence is proper to be considered by you, but you are not to take it or consider it as a basis or ground upon which to award damages. Such evidence is competent to be considered along with all the other evidence in deciding whether or not the market value of the plaintiff's land not taken. has been depreciated by the construction of the channel or ditch. * * * If the residue of the plaintiff's land has not been depreciated, but would sell on the market for as much, or more, than the same land would have sold for, prior to the construction of the ditch, the plaintiff has suffered no consequential damages, and he would be entitled to recover only for the value of land actually taken and used in the construction of the ditch." The jury were told by other instructions given at plaintiff's request that in determining whether the land had been damaged they might consider the size of the farm, the purpose for which it was used, the improvements and how they were located, the location of the ditch and embankments and how they cut the land, the inconvenience of having the land cut into tracts, and in crossing the ditches, the size and depth of the ditches, and whether the location of the drainage improvements will render the farm more or less attractive to buyers, etc. It is also complained that the jury were erroneously instructed that the value of special benefits to the tract in excess of the amount plaintiff had paid as assessed for the cost of construction might be set off against consequential damages; that the court refused to instruct, "All general benefits are excluded from your consideration, and by a general benefit is meant one which is enjoyed, not alone by the plaintiff, but by the property owners along the line of the drainage district;" refused to instruct that, if the ditch intersected any way by which the plaintiff had access to a part of his farm, they should allow

plaintiff as part of his damages the reasonable cost of construction of a suitable bridge; and refused to instruct that, as a matter of law, the duty devolved upon the defendant to make and maintain suitable bridges and crossings over any private roads upon the land.

There is a radical difference between the conception of plaintiff and defendant regarding the law covering the recovery of consequential damages where land has been taken for a drainage ditch. The view of the district, which was adopted by the court, is. that, where the land has been benefited by the construction of the ditch to an amount in excess of its assessment for the cost of construction, these excess benefits may be set off against consequential damages, and that, since the market value of his land was increased by the enterprise more than the consequential damages sustained, plaintiff suffered no pecuniary loss for which damages can be recovered. Plaintiff takes the position that, in the case of a drainage district, general benefits are those which are enjoyed, not alone by the landowner through whose premises the ditch is run, but those which are enjoyed in common by all the proprietors of the land within the district.

The court was right in refusing to charge that "general benefits" are those which are enjoyed, not alone by the plaintiff, but by the property owners along the line of the ditch. Proprietors along the line of the ditch have received substantial benefit by its excavation draining the land of surplus water, preventing overflows, and permitting crops to be grown where it was impracticable to do so before. These are special benefits. They share, in common with other landed proprietors along or near the boundaries of the district, general benefits, in the increased healthfulness and salubrity of the surroundings, the ability to use the public roads at a time when, if undrained, the roads would be impassable, the removal of swamps or low and wet places, fit breeding ground for malaria-carrying mosquitoes and other pests, and in the general desirability of the vicinity as an abiding place.

Such benefits are not subject to set-off under the rule in this state. We said in *Kirkendall v. City of Omaha,* 39 Neb. 1: "The term 'special benefits' implies benefits such as are conferred specially upon private property by public improvement, as distinguished from such benefits as the general public is entitled to receive therefrom. In common with the general public, the owner of adjacent property is entitled to travel upon an improved highway, and although by reason of the improvement such travel may be rendered easier or more pleasant, yet the benefit is general, because it is enjoyed by the public in common with the owners of adjacent property. If the improvement should result in an increase in the value to adjacent property, which increase is enjoyed by other adjacent property owners as to the property of each exclusively, the benefit is special, and it is none the less so because several adjacent lot owners derive in like manner special benefits each to his own individual property. Such fact, if it exists, in no respect decreases the increment in value enjoyed by any one of the adjacent property owners, and by way of offset such increment should therefore be treated as a special benefit in favor of whomsoever it may arise." See, also, *Chicago, K. & N. R. Co. v. Wiebe,* 25 Neb. 542; *Lowe v. City of Omaha,* 33 Neb. 587; *Omaha Southern R. Co. v. Todd,* 39 Neb. 818; *Martin v. Fillmore County,* 44 Neb. 719; 4 Words and Phrases (1st ed.) p. 3056. After consideration of the cases cited by plaintiff and a search for others, the writer has been unable to find that any court has ever differentiated the nature of general and special benefits in condemnation proceedings by a drainage district from those in proceedings instituted for railway, irrigation or highway purposes. The district court properly followed the established rule.

The complaint that the court erred in refusing to instruct that, if the ditch intersected any way by which the plaintiff had access to his farm, they should allow as part of his damages the reasonable cost of construction of a suitable bridge, is not well taken. The court expressly

told the jury that such evidence is proper to be considered in deciding whether or not the market value of the land not taken has been depreciated by the construction of the channel, and, as plaintiff admits, treated the cost of building bridges as an element of damages. It would have been better to have omitted the statement that the evidence as to the cost of the bridge is proper to be considered, "but you are not to take it or consider it as a basis or ground upon which to award damages;" but, since they were also told that the inconvenience of reaching the land cut off by the ditch was an element of damages for them to consider, we think no prejudice could result.

As to the complaint that the court erred in refusing to instruct that, as a matter of law, the duty devolved upon the defendant to make and maintain suitable bridges over any private roads upon the land, the requested instruction was foreign to the issues, and inconsistent with that just mentioned tendered by the plaintiff.

The evidence clearly shows that the value of the land has been increased from an average value of about $40 an acre to a value of from $85 to $100 an acre; that in some years before the ditch was dug the farm was almost entirely overflowed, in others the water covered large portions of it; and that the general effect of the drainage improvements has been to render the land much more valuable. It appears, however, that the excavation of the ditches has necessitated lengthy detours in order to reach portions of the land lying on the other side of the ditches from the two dwellings on the farm, and that a small tract of two or three acres is practically inaccessible without a small bridge. The evidence as to the cost of bridges varies from $75 to $200 for a bridge across the lateral and from $500 to $1,600 for the cost of a bridge across the main ditch, the difference being owing to the material and manner of construction. There is testimony that there are about 200 wooden bridges in the county over similar openings constructed according to the lower estimate. The higher estimates are for steel bridges set upon steel piling.

The inconvenience of access seems to constitute the only consequential damages suffered. Technically speaking, the jury should have found that damages had occurred to some amount, and should have offset the excess special benefits against the damages found (*Gutschow v. Washington County*, 74 Neb. 794,800); but, since the evidence shows that the special benefits in excess of what the plaintiff paid as his share of construction very largely exceed the damages proved, no prejudice to the plaintiff has resulted, and the case will not be reversed for that reason alone.

Plaintiff argues that since, in order to render his land more readily accessible, he will be compelled to build these bridges, while his neighbor within the drainage district, whose land is not intersected by the ditch, receives the same benefits in the increased value of his land but is not subject to this expense or the alternative inconveniences of access, the benefits are unequally apportioned and the rule which allows such a result is unjust. This is true to some extent, but in the construction of public improvements it is impossible to adjust damages or benefits with mathematical exactness so that each landowner within the district may be treated exactly alike. A farmer whose land lies outside of but adjoins the boundary of the district may be largely benefited by the drainage of the valley, and yet he is not compelled to pay any part of the cost of the improvement. A railroad may make cuts and fills on one man's land and practically spoil his farm, while it may not touch the land of his neighbor, and yet, by the location of a station close by, the value of the neighbor's land may be quadrupled. And so with a street; when a new street is opened the adjoining owners usually receive a large increase in the value of the land abutting upon the street, while other proprietors equally meritorious receive no benefit whatever. Human machinery for administering justice does not work infallibly, and it is impossible to make a rule that will do equal and exact justice in all cases. The principles which have been

adopted by the courts with regard to the ascertainment of consequential damages seem to furnish the best general rules for doing justice that experience has devised. What is said, however, does not apply to the apportionment of special benefits in the first instance.

It is clear that the plaintiff has suffered no pecuniary damage to the land not actually taken by the ditch.

We find no prejudicial error. The judgment of the district court is

AFFIRMED.

HAMER, J., not sitting.