DEFENDANT in error is hereinafter referred to as "Noffsinger," or "plaintiff"; and plaintiff in error as "the district," or "defendant." *Page 204 
Noffsinger, alleging that the district had, over his protest, constructed a drainage ditch across a quarter section of his land, and in so doing seized or destroyed $4,374 worth of his property, brought this action for that sum. On the trial he obtained a verdict for $2,000 and judgment was entered accordingly. To review that judgment this writ is prosecuted.
The district, a corporation, was organized and operated to irrigate arid land. In this work it apparently more than succeeded. Lands within it became so saturated that they were abandoned. Sold for taxes without other bidders, the district took them. The waters which had wrought this ruin were lost to use. To reclaim these waters and redeem these lands drainage was resorted to. By the construction of the ditch here in question some 17,000 acre feet of irrigation water was developed and approximately 10,000 acres of seeped land redeemed. All this to the profit of the district, and, indirectly, of each landowner therein. Hence the district should pay for the construction of the drainage ditch, including the property of plaintiff taken or damaged, and each of said landowners thus be held indirectly liable for his share of the cost of the improvement. But, says the district, in addition to such "indirect" benefits there were others that were "direct"; i. e., arising from the drainage of the lands of private owners. These "direct" benefits were great or small as the lands drained were near the ditch or distant from it. Plaintiff's farm being intersected by the ditch, he was one of the chief beneficiaries. He not only gets his share of the indirect benefits and the lion's share of the direct benefits, but if this judgment stands will compel the other landowners to relieve him of all liability for the latter. This the district says he cannot do because: (1) He is foreclosed by statute; (2) he is estopped by his conduct; (3) his damages are more than offset by benefits.
1. The district relies upon section 1971, C. L. 1921, *Page 205 
which specifically confers upon it the right "to enter upon any land in the district, to make surveys and to locate and construct any canal." It says the canal so constructed is the district's canal, and since construction without maintenance would be futile, maintenance is included by necessary implication. If this position is correct we must read into the statute, following the foregoing quotation, the words, "and to maintain the same, all without the payment of any compensation." So amplified by interpretation the section becomes a flagrant violation of section 15 article II of our state Constitution which provides, "that private property shall not be taken or damaged, for public or private use, without just compensation." That section is a part of our Bill of Rights. It marks the boundary beyond which the people have forbidden their lawmakers to pass and, by the same token, have commanded their courts to hold any such passage illegal. How inviolable that constitutional inhibition is, is demonstrated by the fact that we once inadvertently permitted its protection to be threatened (North SterlingDist. v. Dickman, 59 Colo. 169, 149 Pac. 97, Ann. Cas. 1916D, 973), but at the first opportunity overruled the dangerous precedent and returned to the solid ground of strict construction. Commissioners v. Adler, 69 Colo. 290,194 Pac. 621, 20 A.L.R. 512. Defendant's interpretation of said section 1971 would therefore render it unconstitutional, and a well established rule forbids that course if any other is open. Not only do we think another is open here, we think the plain intent of the act is within the Constitution; i. e., the district is given the right to enter and take, but is nowhere absolved from the obligation to pay. It may purchase, condemn, or settle, but it must pay.
2. There is evidence that the drainage ditch, as first surveyed, ran through plaintiff's "home place"; that he induced the directors to re-locate it; that such re-location *Page 206 
was advantageous to him and detrimental to the project; that when the construction work neared his land he insisted that it cross on subdivisional lines; that when this was refused he forbade further progress; and when that order was violated brought this suit. It further appears that plaintiff attended certain mass meetings where this project was unanimously approved, after discussions in which it was asserted that special damages to land owners whose property was intersected by the ditch would be more than offset by special benefits. Such is the conduct now relied upon to estop Noffsinger. It is not claimed however that such works are ordinarily built without compensation for damages, or that Noffsinger expressly waived any of his rights, or that the course of the ditch over his premises was definitely fixed and known, to him at the time the "mass meetings" were held, or that the directors built up to his land in reliance upon his waiver of damages, or that, if they did, they had sufficient warrant therefor. We find no estoppel here.
3. Defendant's requested instruction No. 3 was to the effect that benefits to land not taken should be offset against damages thereto. It was refused and instead the court gave its instruction No. 5 wherein the jurors were told "these questions are not before you." The correctness of these rulings is the important question here.
Plaintiff says that as one of the landowners of the district he has paid his proportionate share for the benefits of this improvement and is not now to be further taxed by the offset of his special damages. Otherwise, he says, he pays double. To support this position he relies uponGutschow v. Washington Co., 74 Neb. 794, 105 N.W. 548, 107 N.W. 127; but his reasoning is faulty and his authority is not in point. Among the beneficiaries of such a project, benefits and liabilities should of course, as far as possible, be equalized. In the Nebraska case assessments were made according to benefits, hence every advantage had been paid for and every offset was a double charge. Here assessments were made according to acreage and *Page 207 
the benefits thereby purchased are the indirect benefits hereinbefore referred to, also distributed according to acreage. Plaintiff's damage common to all is his share of the cost of the improvement; his benefit common to all, is his proportionate interest therein. He now comes with a claim of special damage over and above the damage of his associates. If he has sustained such, justice and equity demand that he be compensated therefor. But, say those associates, he has received special benefits over and above the benefits received by them. If he has received such, justice and equity demand that they be offset.
The foregoing is but the application of the doctrine of general and special benefits commonly invoked in eminent domain cases. If such benefits are special they can be offset; if general they can not. 20 C. J. 822.
Section 2055, C. L. 1921, authorizes irrigation districts to construct drainage projects and provides that in such case the rights of the district, the powers of its officers, and the law applicable shall be the same. In the instant case the district might have proceeded by condemnation before entry. If, as hereinbefore held, entry without condemnation did not make it a trespasser, then in a suit to determine the respective rights of plaintiff and defendant as to property taken, damages and benefits, the same rules would apply as in an action in condemnation, and in that event special benefits could be offset. 2 Lewis Eminent Domain (3d Ed.) § 693 (471), p. 1196.
The benefits accruing to Noffsinger because of the proximity of his land to the ditch in question are special, and that fact is not altered by the further fact that all other persons in the district whose lands are similarly situated enjoy the same benefits. 10 R.C.L. § 140, p. 160;Wilson v. Greenville Co., 110 S.C. 321, 96 S.E. 301.
In an action by a drainage district to condemn land within its borders for the construction of a drainage ditch the court instructed that special benefits, in excess of plaintiff's assessments for the improvement, should be *Page 208 
set off against damages; and refused to instruct that benefits enjoyed by the other property owners along the line of the ditch, in common with plaintiff, could not be so set off because they were general. In approving these rulings and affirming this judgment Mr. Justice Letton, speaking for the court, says: "The writer has been unable to find that any court has ever differentiated the nature of general and special benefits in condemnation proceedings by a drainage district from those in proceedings instituted for railway, irrigation, or highway purposes."Stocker v. N. V. Drainage Dist., 99 Neb. 38, 41,154 N.W. 862.
The refusal of said instruction No. 3, and the giving of No. 5, constitute reversible error.
In view of the necessity of a retrial of this cause some further comment on this record seems advisable. It is said defendant was a trespasser and there is a rule that a trespasser cannot recover benefits. Citing 38 Cyc. 1035, and Pinney et ux. v. Winsted et al., 83 Conn. 411, cited asPinney et ux. v. Town, etc., 76 Atl. 994. If so it does not seem devoid of exceptions. 10 R. C. L. § 139, p. 158. Assuming such a rule, defendant was exempted from its operation by said section 1971, C. L. 1921. Moreover, by instruction No. 2, this jury was told that defendant's entry was lawful and plaintiff did not object to that instruction.
Plaintiff claims, and was apparently allowed, damages for fencing, bridges, flumes, etc., made necessary by the construction of the drainage ditch. It was claimed that these, or some of them, had been supplied by defendant after the beginning of the suit and before trial. But because this fact was not pleaded evidence thereof was excluded. On another trial leave should be granted defendant to put this matter in issue by the proper pleading and its evidence thereon should then be received.
For the error hereinbefore noted the judgment is reversed and the cause remanded for a new trial. *Page 209 
MR. JUSTICE BUTLER dissents.