[Civ. No. 5932. Third Appellate District.—November 26, 1937.]

THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents, v. CHARLES W. HOWARD, Appellant.

Leland S. Bower for Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Robert J. Stahl, Deputy City Attorney, for Respondents.

THOMPSON, J.—The defendant has appealed from a judgment restraining him from removing five dwelling houses from two lots in Los Angeles which were sold to the city pursuant to law to satisfy a lien to secure the payment of delinquent street assessments levied under the provisions of the California Street Opening Act of 1903 and amendments thereto. (Stats. 1903, p. 376, 3 Deering's Gen. Laws of 1931, p. 4496, Act 8198.) It is contended this act creates a lien upon the land only to the exclusion of the improvements thereon, and that the appellant therefore has a right to remove the dwelling houses.

 The appeal is presented on a stipulation of facts which concedes that the defendant is the owner of lots 8 and 9 of the City Boundary tract in block C fronting on Virgil Street in the city of Los Angeles, upon which there are five frame dwelling houses; that the improvement district was duly organized for the purpose of opening and widening the street; that special assessments were regularly levied against each of the lots in the sum of $2,651.84; that bonds were issued to represent the indebtedness created thereby as provided by the Improvement Bond Act (Stats. 1911, p. 1192), and that the lien was foreclosed and the property sold for default in the payment thereof. The stipulation concedes that the sole question to be determined on appeal is whether the five buildings which were situated on the lots at the time of the special improvement assessments are subject to the lien which was created by the statutory procedure incident thereto.

We are of the opinion the dwelling houses are a part of the real property against which the special improvement assessments were levied, and that the statutory lien which was

created by the provisions of section 20 of the Street Opening Act, *supra,* attached to the dwelling houses as well as to the lots, and that the injunction was therefore properly issued restraining the defendant from removing the buildings therefrom. (Stats. 1903, p. 376, and amendments; 3 Deering's Gen. Laws of 1931, Act 8198; secs. 658 and 660, Civ. Code; *Los Angeles Pac. Co.* v. *Hubbard,* 17 Cal. App. 646 [121 Pac. 306] ; *Ex parte Hill,* 194 Ala. 559 [69 So. 598].)

A study of the entire Street Opening Act convinces us that the legislature did not use the term "lot, piece or parcel of *land*" against which the special assessment is authorized to be levied, in the sense or with the limitation indicated by the definition of the word "land" as it is found in section 659 of the Civil Code. It seems clear that the legislature intended by that act to authorize the "opening, extending, widening, straightening, establishment or change of grade, in whole or in part, of any one or more of any public streets, squares, lanes, alleys, courts or places within such municipality" when the public interest or convenience requires it, and the levying of a special assessment "in proportion to the benefits to be derived from said improvement" against the *real property affected thereby.* Section 20 of that act provides that "each of such assessments shall be a lien *upon the property against which it is made*". The title to that original act and to every amendment thereof provides for the "assessment of *property*" within the assessment district. Throughout the act the term "property" is used more frequently than any other term. Section 21 refers to "the owner of any property assessed". Section 22 authorizes the service of notice of the proceeding to be made upon "each owner of *real property* within the assessment district". Section 23 provides for publication of notice of sale containing a description of "each *parcel of property* delinquent". Section 24 authorizes payments of assessments to be made prior to the sale of "any piece of property assessed". Section 26a vests a lien for the security of the special assessment in the following language: "It is hereby declared to be the true intent and meaning of this section to make the cost and expense of all local improvements actually made or proposed to be made in the attempted exercise of the powers conferred upon municipalities *under this statute, payable by the real estate benefited.*" Section 33, which defines the term

"owner" of property involved in the proposed improvement to include the person owning the fee, or "the legal title to *real property*" as it appears from duly recorded deeds thereof, or "any person *in possession of real property*". It is true that in section 15, and elsewhere in the act, it refers to "each separate lot, piece or parcel of land" within the assessment district. And section 16 requires the street superintendent of the city to assess the total expense of the proposed improvement "upon and *against the lands* . . . in proportion to the benefits to be derived from said improvement". It is evident that the terms "property", "lands", "lots", "pieces", "parcels", and "real estate", affected by the special assessments, are used interchangeably, and that the legislature did not intend to thereby create a lien only upon the earth or soil of the assessed property as distinguished from the fixtures or improvements thereon. As it is said in the case of *Ex parte Hill, supra,* which was a similar street improvement proceeding wherein the same limited construction of the term "land" was insisted upon:

"We do not think that the giving of same (instruction) was reversible error, as the words 'lands' and 'property' are used interchangeably. The benefits to lands was all that was involved and the term 'land' would include the house and everything that was a part of the realty. The word 'land' included all property that could have possibly been specially benefited as a result of the improvement."

The fixed improvements on the land, for the purpose of a special assessment under the Street Opening Act, are necessarily included within the terms "property", "land", "real estate", as they are used in the statute, and the lien therefore extends to such improvements as well as to the land or real property upon which they are constructed.

Real property is that which is "immovable". (Sec. 657, Civ. Code.) "Real or immovable property consists of: 1. Land; 2. That which is affixed to land; . . . " (Sec. 658, Civ. Code.) Fixtures are defined by section 660 as including buildings which are constructed thereon. It reads in part:

"A thing is deemed to be affixed to land when it is . . . imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings."

■ It is true that special assessments are charges imposed by statute against particular parcels of real property as distinguished from taxes against an individual. Special assessments are imposed to defray the expenses in whole or in part of local improvements made by a municipality, on the theory that the owner of the property will receive special benefits from the improvement in excess of the benefits accruing to the general public. (44 C. J. 481, sec. 2806.) The statute authorizing such special assessments will not be enlarged. But in accordance with elementary principles of construction, the meaning of statutes relating to special assessments must be determined by a consideration of all the provisions thereof, which may be done only by reading the entire statute as a whole. In reading the entire Street Opening Act, as we have indicated, we are convinced the phrase, "lots, pieces or parcels of land" was not used by the legislature to limit the assessment to the bare soil to the exclusion of improvements or fixtures which exist thereon. Like the lien created by a mortgage under section 2926 of the Civil Code, special assessments under the statute in question are impressed upon everything that would pass by a grant of the property.

There is nothing in the case of *Los Angeles Pac. Co.* v. *Hubbard, supra,* in conflict with our construction of this statute. Both parties to the action rely on that case to support their opposing contentions. The Hubbard case merely held that the superintendent of streets of the city of Los Angeles, under the provisions of the Street Opening Act in question, was not authorized to separately assess "ties, tracks, poles, rails and switches", belonging to the railroad property within the district. In other words, it is determined that for the purposes of such special assessments, the real property only is to be assessed. But that does not mean that a levy against land will not also attach to all fixtures and improvements which by law are deemed to be an inseparable part thereof. In speaking of the special assessment in that same case, the court says:

"Included in the assessment was the franchise, whereby was granted the right to construct, maintain and operate plaintiff's railroad along and over that portion of the street within the boundaries of the district. . . . 'This species of property . . . is assessed as real estate in the same manner,

and upon the same principles, as land—as if the company owned the land itself upon which the track is laid to the extent of its interest in it. It is as immovably established on the particular portion of the earth as the lot occupied by stores fronting on the same street, and the estate in the one can no more be enjoyed away and apart from its fixed locality than the estate in the other.' ''

In deciding that the ''ties, tracks, poles and switches'' belonging to the railroad company, should not be separately assessed, and upon the contrary, that the special assessment against the railroad right of way within the boundaries of the district necessarily included such fixtures, the court further said in the Hubbard case:

''Since the easement created constituted a piece or parcel of land, it must follow that the improvements, consisting of poles, wires, ties, rails, etc., constructed thereon and affixed to the land pursuant to the terms of the grant and necessary to the use of the easement for the purpose granted, must be deemed a part of such piece or parcel of land. (*In re North Beach & M. R. R. Co.*, 32 Cal. 499, and cases therein cited.)''

It follows that the lien which was created in the present case attaches to the five frame dwelling houses which were constructed upon and therefore became an inseparable part of the real property which was assessed, and that the injunction to prohibit the owner from removing those buildings was properly issued.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.