[Civ. No. 13721.   First Dist., Div. One.   July 26, 1948.]

ORO LOMA SANITARY DISTRICT (a Corporation), Appellant v. F. W. VALLEY et al., Respondents.

Kirkbride, Wilson, Sutton, Harzfeld & Wallace for Appellant.

J. W. O'Neill and A. A. Rogers for Respondents.

BRAY, J.—Appeal by plaintiff district from that portion of an interlocutory judgment in condemnation which allowed defendant Dorothy Giacometti certain sums as severance dam-

ages, and "which fails to allow the plaintiff any off-set, or deduction from said damages, for the benefits accrued to defendant's property."

The single question presented is—in an action in eminent domain brought by a sanitary district against the owner of property which has been specially assessed under the Municipal Improvement Act of 1913, is the sanitary district entitled to have the benefits which accrue to the property set off or deducted from the amount of severance damages?

Plaintiff, a public corporation organized under part 1, division 6 of the Health and Safety Code, took the necessary proceedings under the Municipal Improvement Act of 1913 (Stats. 1913, p. 421, as amended; 2 Deering's Gen. Laws, Act 5215), to construct certain storm water drains. After levying the necessary assessment to cover the cost of the proposed improvement, the district brought this action in eminent domain against the owners of 38 parcels of land to acquire the necessary easements for the proposed drains. The court allowed the defendant Giacometti the following sums:

Value of land taken for easement................$ 933.50
Severance damage
    (a) Triangular piece .03933 acres (which the court found was made valueless by the taking) ..............................    137.65
    (b) 1.968 acres valued at $3,500 per acre, depreciated 65% ........................ 4,170.20

        Total ...........................$5,241.35

No appeal is made from the allowance for the value of the land taken or for the damage to the triangular piece. The appeal is from the refusal of the court to consider as an offset against the $4,170.20 allowed as severance damage, the claimed benefits to the severed land by reason of the construction of the improvement. The district prior to the time of trial had actually constructed the planned improvement.

Finding XI sets forth the position taken by the trial court in this behalf: "That plaintiff heretofore levied and collected assessments against all of the real properties lying within the Oro Loma Sanitary District, including the real property owned by defendant Dorothy Giacometti and particularly described in paragraph II of these findings, pursuant to the provisions of the Municipal Improvement Act of 1913, as amended (General Laws, Act 5215), and that any benefits

resulting to or received by any and all of the real property described in paragraph II of these findings, by reason of the construction and maintenance of said storm water drainage ditch, were so assessed against all of said property of said defendant Dorothy Giacometti, and for said reason no such benefits are considered or allowed by the Court herein.''

Plaintiff contends, and offered evidence, to the effect that the construction of the drain on defendant's property changed the character of the property from purely agricultural, and of comparatively little value, to residential subdivision property of high value, and that such change constituted a special benefit, rather than a general benefit to the remaining land. Defendant contended, and offered evidence, that prior to the improvement the land was subdivision property; also, that if the construction of the improvement caused such change in its character, it was a change enjoyed by all the other property in the district; hence such change was a general benefit and not the special benefit which the eminent domain law permits to be offset against the damage to the severed land. Inasmuch as the court refused to consider any offset for benefit derived, the court did not pass upon these questions, except possibly by the fact that the value per acre which it placed upon the property is apparently subdivision rather than agricultural value.

For the purposes of this opinion, we will assume that prior to the construction of the improvement the land was solely agricultural, and by the construction was changed to residential subdivision property, and that such change was a special benefit not received by other lands in the district.

The law concerning eminent domain proceedings by a public corporation such as a drainage district provides that the court must diminish the amount of severance damages to be awarded in the amount of any proved special benefits which accrue to the defendant's land not taken.[1] Defendant concedes this to be the general rule, but contends that where, as here, the land of the owner has been assessed to pay for the improvement in proportion to the benefit derived, to set off in the eminent domain proceeding the benefits against the damages would constitute double taxation, or payment. Plaintiff contends that the benefits upon which the assessment is based can only be the general benefits; in other words, the benefits which the land in question receives generally with all the

---

[1] Cal.Const., art. I, § 14.

other lands in the district, and that special benefits, that is, benefits which "result from the mere construction of the improvement, and are peculiar to the land in question"[2] can only, and must be, considered in the eminent domain proceeding.

Section 1248 of the Code of Civil Procedure provides: "The court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess: . . . 3. Separately, how much the portion not sought to be condemned, and each estate or interest therein, will be benefited, if at all, by the construction of the improvement proposed by the plaintiff; and if the benefit shall be equal to the damages assessed under subdivision two, the owner of the parcel shall be allowed no compensation except the value of the portion taken; but if the benefit shall be less than the damages so assessed, the former shall be deducted from the latter, and the remainder shall be the only damages allowed in addition to the value; . . ."

"It is true that the state would be entitled to have the award of severance damages assessed against it diminished in the amount of any proved special benefits which accrued to the defendants' land which was not condemned. Article I, section 14, of the California Constitution . . . provides . . . [quoting]

"It clearly appears from the preceding provision that an ordinary corporation may not appropriate a right of way without first compensating the owner therefor *irrespective of any benefits to be derived from the improvement.* But municipal corporations, counties and the state are specifically excepted from that rule. It is clearly inferred that when a right of way is condemned by a municipal corporation, a county or the state, such appropriators are entitled to have the severance damages which are awarded against them reduced in the amount of the benefits which accrue to the property not taken on account of the proposed improvements. However, such benefits must be special in character as distinguished from general benefits enjoyed by the public at large. . . . Special benefits are defined in the Marblehead Land Company case, *supra,* as those which 'result from the mere construction of the improvement, and are peculiar to

---

[2]*People* v. *McReynolds,* 31 Cal.App.2d 219, 223 [87 P.2d 734], quoting from *Los Angeles* v. *Marblehead Land Co.,* 95 Cal.App. 602, 614 [273 P.131].

the land in question. These special benefits must be such as are reasonably certain to result from the construction of the work.' " (*People* v. *McReynolds, supra,* pp. 222, 223. See also *Collier* v. *Merced Irr. Dist.,* 213 Cal. 554 [2 P.2d 790], and Code Civ. Proc., § 1248.)

To determine whether the general law allowing special benefits to be set off in eminent domain proceedings applies here, requires a construction of the meaning of section 2 of the Municipal Improvement Act of 1913. That section provides for the adoption by the district of a resolution of intention to do the proposed work, and requires the proper officer to file with the clerk of the board of the district a report containing (1) plans and specifications of the proposed improvement; (2) "An estimate of the cost of said improvement and of the cost of lands, rights of way and easements and of the incidental expenses in connection therewith"; (3) a diagram showing the assessment district; (4) "A proposed assessment of the total amount of the cost and expenses of the proposed improvement upon the several subdivisions of land in said district *in proportion to the estimated benefits to be received by such subdivisions, respectively, from said improvements; . . .*" (Emphasis added.)

That "benefits" here means both general and special benefits is the only reasonable construction of the language used. It is obvious that there is required to be filed a report which will show the board of the district and the landowners within it, what the contemplated improvement is to cost, including "cost of lands, rights of way and easements." It is impossible to estimate these costs without estimating as to each subdivision of land, not only the cost of the land, right of way, or easement actually taken, but the severance damage caused thereby. It would be a strained construction of the phrase "cost of lands, rights of way and easements" to hold, as suggested by plaintiff, that it limited the cost to the land, right of way or easement actually taken, and did not include the cost of the severance damage to the property not taken. When the cost of land, rights of way and easements are spoken of, there is necessarily included and commonly understood to be included all of the cost which the condemning power will have to pay to obtain the same so that the improvement can be constructed, and obviously that includes the damages to be paid. If, in estimating the severance damage, no estimate were made of the benefits to be derived, which under

the law could be set off against that damage, then an entirely false estimate of the cost would be made. While the act provides for supplemental assessments (§ 15), that fact does not change the situation that the first assessment must give as accurate an estimate of all costs as possible and does not mean that the word "benefits" in subdivision 4 shall have other than its common meaning. To adopt the interpretation asked by plaintiff would mean that we would be required to read into the statute, before the word "benefits," the words "general, but not special." This we cannot do.

This precise question has never before been passed upon in California. The nearest approach to it was in the case of *Jacobus* v. *City of Oakland*, 42 Cal. 21. There the wording of a special act authorizing improvements in the city of Oakland provided a method of assessment which expressly required all benefits to be considered at the time of making the assessment. The Oakland act provided that the commissioners "shall proceed to examine the land and improvements to be affected by the proposed improvement, and *shall first ascertain the amount of damages* to be sustained, the names of the owners of the property to be damaged, *and the amount to be paid to each of such owners therefor.* They shall then assess upon the property to be benefited by such improvement a sum sufficient to pay the whole amount of such damages . . ., and shall apportion the same among the owners of the several parcels of property to be thus benefited, in proportion to the amount of benefits to accrue to each." (Emphasis the court's.) While the wording of that act is different from the Municipal Improvement Act of 1913, the court in its decision answers the contention of plaintiff that the interpretation we are giving the latter act would be unworkable. "The owner of land taken for the street would then receive, in money, the value of the land taken for public use; and if he owned adjoining or other lands benefited by the improvement, he would be required to pay, by an assessment upon such benefits, his proportionate share of the aggregate damages and expenses of such improvement, without reference to any compensation due him for lands taken; and the owner of other lands benefited, no portion of whose lands had been taken for the street, would be assessed upon his benefits in precisely the same ratio of benefits, to meet the aggregate damages and costs.

"By this method the costs of the improvement would be apportioned to the parties benefited, upon terms of proximate

equality, and each party whose lands were taken for the street would receive compensation therefor." (Pp. 26, 27.)

■ The very theory of special assessments shows that they are based upon all benefits to be received by the land from the proposed improvement, and not only upon the general benefits resulting therefrom. In *City of Los Angeles* v. *Howard*, 23 Cal.App.2d 624 [73 P.2d 1234], in holding that the lien of a street improvement assessment should attach to the buildings as well as the land, the court stated (p. 628) : "It is true that special assessments are charges imposed by statute against particular parcels of real property as distinguished from taxes against an individual. Special assessments are imposed to defray the expenses in whole or in part of local improvements made by a municipality, on the theory that the owner of the property will receive special benefits from the improvement in excess of the benefits accruing to the general public. (44 C.J., 481, sec. 2806.) The statute authorizing such special assessments will not be enlarged."

Cases from other jurisdictions are of little value for the reason that the statutory provisions of other states vary considerably from the provisions of the Municipal Improvement Act of 1913, as well as from each other. In *San Luis Valley Irr. Dist.* v. *Noffsinger,* 85 Colo. 202 [274 P. 827], cited by plaintiff, the assessment was made on an acreage basis, rather than on the basis of benefits to be received from the proposed improvement. The court in its opinion points out the fact that had the assessment been on the basis of benefit received, as in the case of *Gutschow* v. *Washington County*, 74 Neb. 794 [105 N.W. 548, 107 N.W. 127], which the owner had cited, the district could not have been entitled in the condemnation suit to set off the benefits received by the land from the improvement. In *Stocker* v. *Nemaha Valley Drainage Dist. No. 2,* 99 Neb. 38 [154 N.W. 862], the court does not discuss the question of how the assessment was arrived at and hence is of no value here.

■ Cases from other jurisdictions are helpful in stating the general principle of law condemning as double taxation a setoff of special benefits against severance damages where an original assessment was made.

In *Brittingham* v. *Board of Com'rs of Drainage Dist. No. 1* (1928) 67 La. 368 [119 So. 259, 261], it was said : "Defendants seek to offset the damages suffered by plaintiff by the benefits that the remainder of the tract has derived from the enterprise.

Defendants are not entitled to such an offset. Plaintiff is presumed to pay for these benefits by the taxes he pays on the land for the digging of the canal. He cannot be made to pay twice for the improvement—once, by way of taxation, and again, by way of offsetting the damages he has suffered with the benefits that his land has received.''

In *Gutschow* v. *Washington County, supra* [105 N.W. 548, 549], the court said: ''In the case of a highway being opened across his premises or of a railway being constructed thereon, the land owner may in a sense be said to pay the value of the special benefits which he derives by reason thereof, by such value being deducted from whatever damages the land not actually taken for the improvement may suffer by reason of the same. In the case of a drainage ditch, however, these benefits are assessed against him by the very act of the public authorities which appropriate his land to the public use. To allow these benefits to be deducted from any damages which he may suffer to the land not taken would be to compel him to pay twice to the public the value of the special benefits which he has received. This would manifestly be unjust and inequitable and would impose a burden upon him in excess of that borne by those whose lands were not damaged.'' (See also *Anderson* v. *Board of Com'rs* (1920), 107 Kan. 655 [193 P. 329, 330] ; *Young* v. *City of Toledo* (1931), 39 Ohio App. 553 [178 N.E. 33, 34] ; and *City of Detroit* v. *Loula* (1924), 227 Mich. 189 [198 N.W. 837, 838].)

In 145 American Law Reports, page 135 appears the following: ''The question whether benefits accruing to property which has been damaged, or to property remaining after part thereof has been taken, for the construction of a public improvement, may be set off against the compensation for the damage or for the part taken, in a situation in which the property remaining or damaged is subject to a special assessment, may arise in a confusingly great variety of situations. . . . But there is one safe standard which applies irrespective of the situation in which the question arises—that is, benefits cannot be deducted if, in a particular situation, to allow such deduction would in effect compel the condemnee to pay twice for the same benefit. . . . In accordance with the above rule, benefits accruing to land which has been damaged, or part of which has been taken, for the construction of a public improvement, cannot be set off against the compensation awarded for the taking or injury, *where the same benefits* have been

made the subject of a special assessment, irrespective of whether such assessment has already been paid by the owner, or is still open to payment. This rule has also been applied where property was subject to taxation for benefits, even though it does not appear that an assessment had been made at the time the condemnation proceedings were decided, or although the tax authorities failed to levy such an assessment." (Pp. 136-141.) (Emphasis added.)

■ The evidence fails to disclose whether the district board in making its assessment based it upon the estimated special as well as general benefits to be received by defendant's land from the construction of the improvement. (It was stipulated at the trial that assessments were levied by the district against the land of defendant pursuant to the provisions of the Municipal Improvement Act of 1913.) This fact is immaterial, because if it is the law, and we hold that it is, that the assessment must be in proportion to the special as well as general benefits, then it must be presumed that the board did its duty and made its assessment that way.

The trial court was correct in its refusal to offset against severance damages the special benefits, if any, derived from the construction of the improvement, for the reason that under the Municipal Improvement Act of 1913, the defendant had already paid for such benefits.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied August 25, 1947, and appellant's petition for a hearing by the Supreme Court was denied September 23, 1948.