[Civ. No. 1932. Fifth Dist. Oct. 31, 1973.]

JOHN KALASHIAN et al., Plaintiffs and Appellants, v.
COUNTY OF FRESNO, Defendant and Respondent.

[Civ. No. 1933. Fifth Dist. Oct. 31, 1973.]

MIKE GARABEDIAN et al., Plaintiffs and Appellants, v.
COUNTY OF FRESNO, Defendant and Respondent.

**COUNSEL**

Wild, Christensen, Carter & Hamlin, Robert G. Carter, Andrews, Andrews, Thaxter, Jones & Baxter and Franklin P. Jones for Plaintiffs and Appellants.

Lerrigo, Thuesen, Smith, Walters & Nibler and Maurice E. Smith for Defendant and Respondent.

## OPINION

**GARGANO, J.**—This is a consolidated appeal from judgments of the Superior Court of Fresno County upholding two special assessments levied by the County of Fresno, respondent herein, on behalf of Fresno County Improvement District No. 111; the improvement district was formed and the assessments were levied pursuant to the Municipal Improvement Act of 1913 as set forth in division 12, commencing with section 10000, of the California Streets and Highways Code. For convenience, appellants in case No. 1932 will be referred to as the Kalashians; appellants in case No. 1933 will be referred to as the Garabedians. The undisputed facts follow.

The Kalashians and the Garabedians own separate parcels of property within the unincorporated area of Fresno County. Each parcel is zoned for industrial uses and in 1969 was located near a sewer line; the Kalashian parcel was near a sewer line that terminated at the corner of Pullman and Calwa Avenues; the Garabedian parcel was adjacent to a sewer line located beneath Orange Avenue. Both sewer lines were owned by the City of Fresno and were outside of the city boundaries; they will hereafter be referred to as the Pullman Avenue line and the Orange Avenue line, respectively.

On August 20, 1969, Fresno County's mandatory sewer ordinance became effective; this ordinance required county property owners to connect their properties to a public sewer if one were available and gave the property owners three years in which to make the connections. Thereupon, the Kalashians and the Garabedians applied to the City of Fresno for permission to connect their properties to the city's sewer lines; the Kalashians ascertained that it would cost $6,067 to connect their property to the Pullman Avenue line; the proposed fee for the connection of the Garabedian property to the Orange Avenue line was $4,094.48.

On August 18, 1970, the Fresno County Board of Supervisors adopted a resolution declaring its intention to form an improvement district, to be known as the Fresno County Improvement District No. 111, pursuant to the Municipal Improvement Act of 1913; the board had declared previously that installation of sanitary sewers for the area involved was essential for the public health and that a special assessment proceeding should be in-

itiated to finance the construction. The August resolution described the boundaries of the improvement district, stated that improvement bonds would be issued to finance the improvement and ordered the Director of Public Works of Fresno County, who was designated as the "Engineer of Work," to prepare and file the written report required by chapter 3 of division 12 of the Streets and Highways Code; the Kalashian and Garabedian properties were included within the proposed improvement district.

On the same day the director of public works filed a report, indicating among other things that the proposed improvement district entailed the creation of a sewage disposal system through the acquisition of certain existing sewers belonging to the City of Fresno, the construction of new sewers and related facilities, and the linking of the existing sewers and the new construction. The report also contained a diagram showing the boundaries and dimensions of the subdivisions of land within the district and recommended that the assessment to pay the cost of the improvement be spread among "the several subdivisions of land in the District in proportion to the estimated benefits to be received by such subdivisions"; the criteria used were the size or ratio of the parcel to the area, the zoning or prospective uses of the property and the house or branch connection costs.

Also, on August 18, 1970, the board of supervisors set a time and place for hearing protests to the proposed improvement and to any matter set forth in the written report; notice of the time and place of hearing was given to affected property owners as provided by law. Then, the Kalashians and the Garabedians filed written protests, objecting to the proposed assessments levied against their respective properties. They also appeared at the hearing and argued vigorously that because their properties were located within proximity of existing sewer lines, the properties would not be benefited by the proposed improvement; the only new construction planned adjacent to the two parcels was small branch lines to carry the sewage emanating from the parcels.

On October 27, 1970, the board of supervisors adopted the engineer's report and, with some modifications not pertinent to the appeal, confirmed the assessments as proposed therein; the proposed assessment against the Kalashian property was $12,934.82; the proposed assessment against the Garabedian property was $10,246.77. This litigation followed.

Appellants do not challenge the county's power to form Fresno County Improvement District No. 111, the procedures followed by the county in forming the district, or the formula used by the county to spread the assessment. Appellants contend, as they did before the board of supervisors,

that their properties are not benefited by the formation of the improvement district because the Pullman Avenue and Orange Avenue sewer lines were in existence when the assessment district was formed and their properties could have been connected to those lines under the city ordinance.

Appellants' contention is predicated on two erroneous assumptions. Appellants must assume either that they could have connected their properties to the existing city sewers for a fixed fee as a matter of right or that the city had entered into binding and irrevocable agreements granting appellants permission to connect to the lines in the future. They also must assume that once they connected the properties to the city sewer lines, the city was obligated to maintain and operate the lines for their benefit. However, the evidence shows that the Pullman Avenue and Orange Avenue lines were located outside of the city boundaries, that the city was not required to grant appellants permission to connect to the lines and that even if such permission were granted and the fees were collected, the permission was "revocable at the pleasure of the [city] council."[1] While it may be true that appellants' properties were near existing sewer lines when the improvement district was formed, the fact remains that the sewer lines belonged to a governmental agency which could have terminated service at any time and which could have sold the lines to the improvement district, unencumbered by any prior commitments the city may have made to appellants or to anyone else.

When the record is viewed in this light, it is very clear that appellants were benefited substantially by the formation of Fresno County Improvement District No. 111. Prior to its formation, the Kalashians and the Garabedians had at best a tenuous and revocable right to use the sewer lines of a public agency which had no duty to provide sewage disposal facilities for appellants' properties initially, and which had the right to discontinue service at any time. After the formation of the district appellants had an absolute right, irrevocable except for cause, to connect their properties to a sewage system belonging to a taxing agency which was

---

[1] Section 9-512 of the Municipal Code of the City of Fresno reads in pertinent part: "Persons, firms or corporations owning or operating premises outside the city limits of the City of Fresno *may* be granted *revocable* permission to connect their property with the sewer system of the City of Fresno upon compliance with requirements and conditions hereinafter contained." (Italics added.) Section 9-514 of the Municipal Code of the City of Fresno reads in pertinent part: ". . . (b) Every permit granted for service outside the city shall be subject to the following conditions: (1) That it is revocable at the pleasure of the Council and without notice. . . . (4) That the City of Fresno is granted the right to enter without notice upon the premises served to make measurements; and, if the permit is revoked, to enter upon the premises to disconnect the sewer at the cost and expense of the permittee."

obligated to repair, maintain and operate the system on their behalf and on behalf of every person who owned property within the boundaries of that taxing agency. ▆ It is the settled law of this state that when a special assessment based on benefits is challenged by the landowner, it is not a court's function to determine the extent of the benefits; in the absence of fraud, gross injustice or demonstrable mistake, the judicial inquiry is limited to the determination of whether the property assessed would receive some substantial benefit. (*City of Baldwin Park* v. *Stoskus,* 8 Cal.3d 563, 568-569 [105 Cal.Rptr. 325, 503 P.2d 1333]; *Lloyd* v. *City of Redondo Beach,* 124 Cal.App. 541, 546-547 [12 P.2d 1087]; *Federal Construction Co.* v. *Ensign,* 59 Cal.App. 200, 213 [210 P. 536].)

The case of *Santa Clara Valley L. Co.* v. *Meehan,* 62 Cal.App. 531 [217 P. 787], is supportive of respondent's position. In that case the City of San Bruno acquired a privately owned water system that was servicing the city and then formed a city-wide assessment district and assessed each lot within the city for the cost of the improvement. The plaintiff landowner challenged the assessment, arguing that he was not benefited by the formation of the assessment district because he already was connected to the private water system. In upholding the assessment, the appellate court said: "The claim is without merit. . . . Here, . . . [the claim is made] that by reason of the existence of the privately owned system no possible benefit could accrue to plaintiff's lands under the improvement, as such benefits already existed. It being admitted that the city might acquire a water system if none existed, and that appellant's lands could be impressed with a proper assessment to defray the cost thereof, an extended discussion of the subject becomes unnecessary. The benefit which plaintiff's lands secured through the acquisition by the city of the waterworks, with the more certain probability of the continued existence of the same, considering the opportunity of the municipality to operate such works at actual cost, as against the less certain probability of their being continued under private ownership, is such a benefit as justifies the assessment. Moreover, the ownership and operation of this public utility by the municipality would have a tendency to make the lots more desirable as a place of residence, or more valuable in the general market, as a municipality is authorized to expend public funds for the purpose of extending and improving the same, a thing an individual or a private corporation operating in a small community might not feel justified in or be capable of doing." (*Santa Clara Valley L. Co.* v. *Meehan, supra,* 62 Cal.App. 531, 534-535.)

▆ Appellants argue that the assessments which were levied against their properties resulted in a gross injustice even if it were assumed that the properties would receive some benefits from the formation of the im-

provement district. The sewage emanating from appellants' properties will not flow through the new construction and appellants complain because the assessments levied against their properties included a prorated share of the cost of the new construction.

Appellants' argument is myopic. The purpose for forming an assessment district is to raise the tax funds needed for the construction and maintenance of a vital public improvement through assessments levied against properties which are actually benefited by the improvement. (*City of Los Angeles* v. *Howard,* 23 Cal.App.2d 624, 628 [73 P.2d 1234].) For such a project to be economically feasible, the contemplated public improvement must benefit a substantial number of properties; otherwise the assessments would cause undue hardships on the property owners affected.

In this case the record shows that before forming the district, the county board of supervisors determined that an independent tax-supported sewer system was needed for an area encompassing a substantial number of properties to be benefited by the system. In addition, the board purchased the existing sewer lines from the City of Fresno, made them an integral part of the new construction and entered into a long-term contract with the city for the acceptance into the city's disposal facilities of all of the sewage collected by the district's integrated sewage system.

However, there is not a scintilla of evidence to show that it would have been practical or feasible for the county to form two or more improvement districts. For example, the amount allocated for the acquisition of the city sewer lines was $45,688.36, and for all the record shows it would not have been feasible economically to raise this amount from the formation of an assessment district encompassing only lands located within the proximity of the existing sewer lines. Nor does the record show that it would have been feasible to raise operation and maintenance costs from such a limited area.

 For this court to hold now that appellants cannot be charged their prorated shares of the cost of the new construction, merely because the sewage emanating from their properties will not flow into that part of the system, could defeat the very purpose for which the improvement district was formed and would impinge on the legislative body's prerogative to fix the district's boundaries. It would be tantamount to holding categorically that a person who occupies the first floor of a multifloored condominium cannot be charged a pro rata share of the cost of the construction of the building above the first floor. We decline to do so.

■ Appellants' second contention for reversal is predicated on an alleged estoppel. They assert that the County of Fresno was estopped from levying the assessments in issue because the county mandatory sewer ordinance gave county landowners three years to connect to a public sewer if available, and appellants were not notified that "if they did not connect to the existing sewers before the three years expired they would be included in a sewer district and assessed a much greater amount for the exact same facilities."

In claiming that the improvement district is charging appellants a greater amount than the City of Fresno would have charged them for the same service and the "exact same facilities," appellants equate a revocable license with an absolute right. Furthermore, the improvement district was not formed and appellants' properties were not included within its boundaries to thwart appellants' right to connect to the city sewer lines within the three-year period allowed by the county sewer ordinance; the district was formed because the board determined that the public improvement was needed to protect the public health. Appellants did not change their position as a result of the county ordinance or connect to the existing sewers or pay the connecting fees before the district was formed. Finally, the county sewer ordinance requiring property owners to connect to a public sewer, if and when one became available, was adopted by the county in the exercise of its police power, and the three-year period of grace was not a representation that the county would not acquire the Pullman Avenue and Orange Avenue sewer lines and make them part of a new improvement.

It is elementary that a person cannot recover on the theory of estoppel unless he has changed his position to his detriment in reliance on the promise or conduct of another. It also is elementary that for an estoppel to apply, it must be shown that the party to be estopped was apprised of the facts and intended his conduct to be acted upon in a certain manner. (*Driscoll* v. *City of Los Angeles,* 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].) Appellants' contention that there was an estoppel in this case is sophistical.

Appellants' third contention for reversal is that the trial court refused to make specific findings of fact on the special benefit and the estoppel issues.[2]

---

[2]Appellants also claim that error was committed when the court failed to make a finding as to the board of supervisors' conduct in refusing to consider further protests of appellants on September 29, 1970. Appellants have failed to urge or brief the issue as to whether the board of supervisors' conduct was improper or to direct us to

■ Where the superior court is not acting de novo and is required only to determine whether the decision of an administrative board or legislative body is supported by substantial evidence, the court is not required to make findings of fact. (*Savelli* v. *Board of Medical Examiners,* 229 Cal.App.2d 124, 131 [40 Cal.Rptr. 171].) The trial court's determination that there was substantial evidence to show that appellants' properties received a special benefit from the construction of the improvement and that the assessment did not result in a gross injustice is a decision of law.

■ For the reasons set forth herein, the evidence would not have supported a finding in favor of appellants on the estoppel issue. As was said in *Maloof* v. *Maloof,* 175 Cal. 571, 573 [166 P. 330]: "The failure to find on an issue is not ground for reversal where the record discloses no evidence on which a finding favorable to the complaining party could properly have been made." (See *Jenner* v. *City Council,* 164 Cal.App.2d 490, 501 [331 P.2d 176].)

The judgments are affirmed.

Brown (G. A.), P. J., and Thompson, J.,* concurred.

---

any evidence upon which they could rely for that proposition. The issue, even if raised below, has been abandoned, and the question as to whether the court made the finding is of no consequence.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.