No. 26063

City of Englewood, a Colorado Municipal Corporation; Milton Senti, Howard R. Brown, Dallas J. Dhority, Elmer E. Schwab, Paul T. Blessing, Judith Henning, John J. Lay, as members of the City Council of the City of Englewood v. Caroline B. Weist

(520 P.2d 120)

Decided March 18, 1974. Opinion modified and as modified rehearing denied April 8, 1974.

Bernard V. Berardini, City Attorney, for plaintiffs-appellants.

Criswell and Patterson, John A. Criswell, for defendant-appellee.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The City of Englewood condemned part of the land owned by Caroline B. Weist to widen a street and to install curbs, gutters, sidewalks, and other improvements. Subsequently, Englewood sought to collect a special assessment after enacting a special improvement ordinance. Weist brought suit against Englewood and obtained a permanent injunction which enjoined Englewood from collecting the special assessment to pay for the construction of the improvements. Englewood has appealed. We affirm in part and reverse in part.

A determination of the issues in this case requires that we analyze and interpret the word "benefit," as it appears in the general eminent domain statute (C.R.S. 1963, 50-1-1, *et seq.*) and in the eminent domain statute which is designed for use

of cities and towns in the condemnation of private property for the construction of special improvements (C.R.S. 1963, 50-6-1, *et seq.*).

Englewood is a home-rule city organized pursuant to Article XX of the Constitution of the State of Colorado. In 1971, Englewood, pursuant to its home-rule charter, created Paving District No. 20 for the purpose of widening and paving certain streets in Englewood and for the further purpose of installing curbs, gutters, and sidewalks along those streets. Caroline B. Weist owned property adjacent to a street that was within the special improvement district.

The nature of the proposed improvements made it necessary for Englewood to take immediate possession of the land which was required for the construction of the improvements. Therefore, Englewood elected to condemn pursuant to the provisions of C.R.S. 1963, 50-1-1, *et seq.,* which authorizes immediate possession, rather than under C.R.S. 1963, 50-6-1, *et seq.,* which does not. The fact that the ultimate purpose of the condemnation was to construct a special improvement did not require Englewood to follow the statutory requirement contained in C.R.S. 1963, 50-6-1, *et seq.* We have previously declared that a city has the option of proceeding under the provisions of either C.R.S. 1963, 50-1-1, or C.R.S. 1963, 50-6-1, in condemning private property for a public use. *Toll v. City and County of Denver,* 139 Colo. 462, 340 P.2d 862 (1959). Once Englewood elected to proceed under C.R.S. 1963, 50-1-1, *et seq.,* it could not be forced to follow, comply with, or be bound by the provisions contained in C.R.S. 1963, 50-6-1, *et seq.*

After the petition in condemnation was filed and immediate possession was granted to Englewood, trial of the condemnation issues was held before a commission, in accordance with the provisions of C.R.S. 1963, 50-1-6. Prior to the introduction of evidence, the court ruled that the burden of establishing benefits, as an offset to severance damage to the Weist property, was on Englewood, and that the commissioners would be instructed that there were no benefits to the Weist property if Englewood failed to offer

any evidence of benefits. The attorneys for Englewood then advised the court that the benefits to the adjoining properties, including the Weist property, would be dealt with in a later hearing on the special assessment ordinance. As a result, no evidence of benefits was offered, and the court instructed the commissioners that there were no benefits and provided the commissioners with a certificate of ascertainment and assessment in conformity with the provisions of C.R.S. 1963, 50-1-18, which limited the commissioners to a determination of the value of the land taken, plus damage to the remainder of the Weist land by reason of the taking by condemnation. Pursuant to the trial court's directive, the commissioners thereafter fixed the value of the land taken at $800, damages to the remainder at $1,750, and found that there were no benefits.

Following the actual payment of the condemnation award, Englewood provided public notice that a hearing would be held to consider enactment of a special assessment ordinance to obtain funds to pay for the street, curb, gutter, and sidewalk improvements. Weist appeared at the hearing and protested. Thereafter, the special assessment ordinance was introduced before the city council, and enacted by the council, without holding an additional public hearing. Pursuant to the ordinance, Weist's remaining property was assessed $2,000 for the improvements. Weist immediately instituted suit, claiming that the certificate of ascertainment and assessment in the eminent domain proceeding, and the court's instruction to the commissioners, conclusively established that there were no benefits accruing to the Weist property from the construction of the improvements, and that the doctrine of *res judicata* barred Englewood from reopening the issue of benefits under the special assessment ordinance. *See Ruth v. Department of Highways,* 153 Colo. 226, 385 P.2d 410 (1963). Weist also asserted that the ordinance which created the special assessment was invalid and of no force and effect because no public hearing was held after the ordinance was introduced, as required by the Englewood Charter.

Following the evidentiary hearing, the trial court found that there was no issue as to any material fact and granted summary judgment to Weist on the ground that the certificate of ascertainment and assessment was *res judicata* as to the benefit issue and foreclosed the collection of a special assessment with a permanent injunction. The trial court also found that the failure to have a public hearing after the ordinance was introduced invalidated the ordinance. We affirm the trial court's finding and determination on the validity of the special assessment ordinance, but reverse the summary judgment that was founded on *res judicata*.

■ The term "benefit," as it is used in our eminent domain statute, the predecessor of C.R.S. 1963, 50-1-1, *et seq.*, was defined by us in *Denver Joint Stock Land Bank v. Board of County Commissioners,* 105 Colo. 366, 98 P.2d 283 (1940), in these words:

"The benefits ... are those accruing to the residue of the tract from the construction of the improvement."

The term "benefit," as used in eminent domain law, is not equivalent or interchangeable with the "benefit" which arises out of a special improvement.

■ Although the power to specially assess and the power to condemn are attributes of sovereignty, a special assessment is generally declared to be part of the sovereign power to tax to pay for a public improvement, rather than the coordinate power to take private property for a public use. Both the power of eminent domain and the power to specially assess are similar in limiting the use of the sovereign powers to a public purpose and to promote the general welfare. *Green v. Frazier,* 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878 (1920). *See City of Baldwin Park v. Stoskus,* 8 Cal.3d 563, 105 Cal. Rptr. 325, 503 P.2d 1333 (1972); 1 *Nichols, Eminent Domain* § 141 (3d ed. 1973); 2 *Orgel, Valuation Under Eminent Domain* § 253 (2d ed. 1953). However, the power of eminent domain is separate and distinct from the power of taxation, and each is governed by different underlying principles. *Houck v. Little River Drainage District,* 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266 (1915);

*County of Mobile v. Kimball,* 102 U.S. 691, 26 L.Ed. 238 (1880).

 When private property is condemned for a public purpose, the property owner is entitled to recover an amount equal to the loss which he has suffered by reason of the taking, and nothing more. The taxing power exercised by the creation of a special assessment, on the other hand, allows a municipality to distribute the cost of a special improvement among those property owners who are specially benefited by the improvement, provided that a uniform rule of apportionment is used to determine each property owner's assessment. *Orchard Development Company v. City of Boulder,* 182 Colo. 361, 513 P.2d 199 (1973).

Weist's theory, which equates the two benefits, would cause the amount of each property owner's tax assessment to turn upon the largess or penurious character of the award of a particular commission or jury of freeholders and would eliminate the uniform apportionment which is constitutionally required. The resultant disparity in the tax burdens of landowners adjacent to each other and to the improvement, which results from an application of the Weist theory and the trial court's ruling, violates the Fourteenth Amendment to the United States Constitution.

In dealing with an all but identical question, the Supreme Court of California, in *City of Baldwin Park v. Stoskus, supra,* said:

". . . [T]he justification for the imposition of a special assessment is that the property to be assessed will receive a special benefit over and above that received by the general public. (City of Whittier v. Dixon, 24 Cal.2d 664, 667, 151 P.2d 5; Irish v. Hahn, 208 Cal. 339, 344, 281 P. 385; Federal Construction Co. v. Ensign, 59 Cal.App. 200, 209-210, 210 P. 536). Of course, the amount of each individual assessment is not necessarily measured by the precise amount of 'benefit' flowing to the property owner affected. The assessment is usually based upon the cost of the improvement, spread among the benefited property owners upon some equitable, nondiscriminatory basis. (See 1 Nichols, *supra,* § 1.41 [4],

pp. 81-82; Orgel, *supra,* § 253, p. 274.) The absence of an exact relationship between the assessment levied and the benefit received will not, however, invalidate the assessment, at least in the absence of fraud, mistake or gross injustice. (Larsen v. San Francisco, 182 Cal. 1; 8-9, 14-16, 186 P. 757; Federal Construction Co. v. Ensign, *supra,* 59 Cal. App. 200, 213-214, 210 P. 536; see 1 Nichols, *supra,* § 1.41 [4], pp. 82-83; Spring Street Co. v. City of Los Angeles, *supra* [wholly arbitrary assessment held invalid].)

". . . 'The theory upon which such [special assessment] legislation is enacted is that the lands in the vicinity of a public improvement, and which are specially benefited by it, should pay the expenses of the making of an improvement, in proportion to the benefits received therefrom . . . .' Of course, separate and apart from the assessment procedure, a municipality may exercise its power of eminent domain to acquire particular property to be used in constructing the proposed improvement. Yet the assessment lien arises independently of that acquisition. (Clute v. Turner, *supra;* see Sts. & Hy. Code, § 5372.)

"Accordingly, it is the general rule that 'where a part of a tract of land is taken for a public use, the mere fact that the remainder may thereafter be subject to assessment does not constitute an element of damages in condemnation proceedings.' (Fn. omitted, 4A Nichols, *supra,* § 14.248 [1], p. 14-348; accord, City of Tucson v. Rickles, 15 Ariz. App. 244, 488 P.2d 180, 182; Del City v. Moore [Okl.] 483 P.2d 324, 326; State Highway Commission v. Donovan, 152 Mont. 282, 448 P.2d 671, 673-674; City of Eugene v. Wiley, 225 Or. 327, 358 P.2d 286, 287-288; Application of City of Lincoln, 161 Neb. 680, 74 N.W.2d 470, 472.)"

Under similar reasoning, the "benefit" which justifies a special assessment tax is not the same "benefit" which must be calculated and deducted from a landowner's recovery in an eminent domain proceeding. Therefore, Englewood's failure to prove any benefit to the Weist property in the C.R.S. 1963, 50-1-1 proceeding does not foreclose the city from collecting a special assessment tax.

Englewood was entitled to specially assess for the benefit accruing to the Weist property by the construction of the special improvement.

██ The trial court correctly ruled that the special improvement ordinance enacted by the Englewood city council was unenforceable. Englewood's Charter requires that a public hearing must be held *after* a special assessment ordinance is introduced before the city council. Article V, Section 40. The special assessment ordinance which is the focus of this litigation was formally introduced before the council on April 3, 1972, and enacted by it on April 17, 1972. During the time that the ordinance was pending before the city council, no public hearing was held. The Englewood city council's failure to comply with the clear mandate of the City Charter, which requires a public hearing after introduction of a special assessment ordinance, invalidates the ordinance. As a result, the ordinance cannot provide a basis for collection of a special assessment tax.

We affirm the trial court's ruling which found the special assessment ordinance unenforceable as to Caroline B. Weist and reverse and dismiss the permanent injunction which was predicated on *res judicata* and a finding of no benefits in the condemnation action.

MR. CHIEF JUSTICE PRINGLE does not participate.