**E–470 PUBLIC HIGHWAY AUTHORITY,**
**Petitioner,**

**v.**

**The 455 COMPANY, a Colorado General Partnership, Respondent.**

**E–470 Public Highway Authority,**
**Petitioner,**

**v.**

**Tower 88 Company, a Colorado General Partnership, Respondent.**

**Nos. 99SC302, 99SC303.**

Supreme Court of Colorado,
En Banc.

June 5, 2000.

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, Donald M. Ostrander, James Birch, Special Counsel, Ronald E. vonLembke, Denver, Colorado, Attorneys for Petitioner.

Lowe, Fell & Skogg, LLC, Kenneth K. Skogg, Karen L. Brody, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' opinions in *E–470 Public Highway Authority v. Tower 88 Co.*, No. 97CA1912, (Colo.App. Mar. 4, 1999) (not selected for official publication), and *E–470 Public Highway Authority v. 455 Co.*, 983 P.2d 149 (Colo.App.1999). We consolidated these cases for consideration on appeal because they raise identical issues. In both cases, the court of appeals affirmed the trial court's rulings granting Tower 88 Company's (Tower 88) and The 455 Company's (455 Company) (collectively "landowners") motions in limine preventing E–470 Public Highway Authority (the Authority) from presenting any evidence of special benefits in the condemnation valuation proceedings. After separate trials to a board of commission-ers, the trial court entered judgments of $1,056,500.00 for 455 Company and $1,479,539.09 for Tower 88. Upon review, we conclude that the court of appeals erred in affirming the trial court's orders granting the landowners' motions in limine. Accordingly, we reverse the court of appeals' opinions and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS BELOW

In December 1995, the Authority initiated condemnation proceedings to acquire property owned by Tower 88 and 455 Company for use in the construction of the E–470 highway. Tower 88 owned approximately 1,250 acres of undeveloped land west of Denver International Airport in Adams County. The Authority condemned a ribbon of land, running from north to south through the middle of the property, consisting of approximately 141 acres. The Authority constructed an interchange at 96th Avenue, allowing access from Tower 88's remaining property to the E–470 highway.

455 Company owned approximately 463 acres of undeveloped land also west of Denver International Airport in Adams County. The Authority condemned a ribbon of land, running from southeast to northwest through the middle of the property, consisting of approximately 95 acres. The Authority constructed an interchange at 104th Avenue, allowing access to the E–470 highway from the north and south ends of 455 Company's remaining property via the 104th Avenue interchange and the 96th Avenue interchange.

The Authority and the landowners entered into a stipulation for possession of the property, leaving the issue of the amount of compensation due to the landowners for trial. Prior to trial, the landowners filed motions in limine seeking to exclude all evidence of any "special benefits"[1] to their property, reflected by an increase in the market value of

---

1. "Special benefits" are defined as "those which accrue directly to the residue as a result of the construction or the improvement and which directly and particularly benefit that residue, as opposed to benefitting the public generally." *Western Slope Gas Co. v. Lake Eldora Corp.*, 32 Colo.App. 293, 298, 512 P.2d 641, 644 (1973).

the property, as a result of the construction of the highway. The landowners alleged that the special benefits evidence the Authority sought to introduce was based on the property's proximity to the highway and interchanges. However, the landowners alleged that they would be paying for those same benefits when the Authority collected the Highway Expansion Fee (HEF)[2] based on the proximity of new development to the highway. The HEF is a fee collected by the Authority when buildings are constructed on the property for development. The trial court granted the landowners' motions in limine on this issue in both cases and excluded any evidence of special benefits. After separate trials, the trial court entered judgments of $1,056,500.00[3] for 455 Company and $1,479,539.09[4] for Tower 88 as compensation for the property taken by the Authority.

In the companion cases of *Tower 88 Co.*, No. 97CA1912, slip op. at 2, and *455 Co.*, 983 P.2d at 156, the court of appeals affirmed the trial court's decisions in both cases.[5] The court first noted that section 38–1–114(2)(d), 10 C.R.S. (1999), governing condemnation proceedings for highway acquisition, requires the condemnation award to be reduced by any *"special benefits* which result from the improvement or project, but not to exceed fifty percent of the total amount of compensation." *455 Co.*, 983 P.2d at 156 (emphasis added). The court then defined "special ben-

efits" as "those which accrue directly to the residue as a result of the construction or the improvement and which directly and particularly benefit that residue, as opposed to benefitting the public generally." *Id.* (citing *Western Slope Gas Co.*, 32 Colo.App. at 298, 512 P.2d at 644).

The court noted that although special benefits to the remainder normally may be set off against a condemnation award, "there can be no offset where the remaining property is subject to an assessment for those same benefits." *Id.* The court stated that the purpose of this rule is "to avoid the inequity of forcing the condemnee to pay twice for the same benefits, which would in effect constitute double taxation and would deny the condemnee its constitutionally guaranteed just compensation." *Id.*

In analyzing the issue, the court noted that there was evidence that the landowner would be paying for the benefit of being near Highway E–470 and its interchanges when it paid the HEF. *Id.* Therefore, the court concluded that it was not an abuse of discretion for the trial court to preclude the Authority from introducing evidence of special benefits. *Id.*

The Authority petitioned this court for review of the court of appeals' decisions. We granted certiorari review[6] and consolidated the cases for consideration.

---

2. The Public Highway Authority Law authorizes the Authority to "establish, and from time to time increase or decrease, a highway expansion fee and to collect such fee from persons who own property located within the boundaries of the authority who apply for a building permit for improvements on such property." § 43–4–506(1)(j), 11 C.R.S. (1999).

3. This award consisted of $759,000 as fair market value for the property taken, plus $297,500 as damages to the residue.

4. This award consisted of $1,185,937.80 as fair market value for the property taken, plus $293,601.29 as damages to the residue.

5. The *Tower 88 Co.* court adopted the *455 Co.* court's analysis without comment on the issue before us in an unpublished opinion; therefore, all citations are to the *455 Co.* case.

6. We granted certiorari on the following issues:

 *No. 99SC302* (The 455 Company):

 1. Whether, in the absence of any showing that any funds from the Authority's E–470 Highway Expansion Fee were used to pay for the 96th Avenue and 104th Avenue interchanges, the court of appeals erred by prohibiting the E–470 Public Highway Authority from presenting evidence of special benefits from the two interchanges on grounds that 455 Company may have to "pay twice" for the interchanges by imposition of the Highway Expansion Fee.
 2. Whether 455 Company received a windfall by the court of appeals decision that the existence of the Highway Expansion Fee prohibits the E–470 Public Highway Authority from presenting evidence of over $597,000 in special benefits to 455 Company's remainder as a result of E–470's construction of the 96th and 104th Avenue interchanges.

 *No. 99SC303* (Tower 88):

 1. Whether, in the absence of any showing that any funds from the Authority's E–470 Highway Expansion Fee were used to pay for the 96th Avenue interchange, the court of appeals erred by prohibiting the E–470 Pub-

## II. ANALYSIS

The Authority argues that the trial court abused its discretion by excluding evidence of special benefits because the HEF is a speculative fee due to the fact that the landowners may never pay the fee. Additionally, the Authority contends that revenues generated by the HEF are not used to pay for capital improvements that benefit the property. The Authority contends that the landowners' property has been immediately benefited by the construction of Highway E–470 and the interchanges and that the existence of the speculative HEF should not prevent the Authority from introducing evidence of the amount of special benefits accruing to the property as a result of the construction of the highway.

The landowners contend that the trial court properly excluded the Authority's evidence of special benefits because allowing the Authority to introduce this evidence would require the landowners to "pay twice" for the same benefit and, thus, would deny them their just compensation for their property. The landowners' argument is based on their contention that they will pay for the special benefits to the property when they pay the HEF and, therefore, it would be unfair to allow their compensation award also to be offset by evidence of these special benefits.

After reviewing the record and considering the parties' arguments, we conclude for the reasons stated below that the trial court abused its discretion by precluding the Authority from presenting evidence of special benefits.

### A. Standard of Review

We consider these cases in the context of reviewing the trial court's grant of the landowners' pretrial motions in limine. The trial court's rulings excluded all evidence of special benefits from consideration at trial as a matter of law. The trial court relied on a

principle of law adopted in other jurisdictions holding that no evidence of special benefits to the remaining property resulting from the improvement can be presented in a compensation proceeding when the government has levied a "special assessment" for the same improvement. *See Oro Loma Sanitary Dist. v. Valley,* 86 Cal.App.2d 875, 195 P.2d 913, 917 (1948); *City of Detroit v. Loula,* 227 Mich. 189, 198 N.W. 837, 838 (1924); *City of St. Louis Park v. Engell,* 283 Minn. 309, 168 N.W.2d 3, 7 (1969); *City of Raleigh v. Mercer,* 271 N.C. 114, 155 S.E.2d 551, 557 (1967). *See generally* 3 Julius L. Sackman, *Nichols on Eminent Domain* § 8A.02[7] (rev.3d ed.1999) [hereinafter Sackman]. In accordance with this legal principle, the trial court made findings of fact that the HEF was a special assessment that charged for the same special benefits that the Authority sought to introduce at the condemnation proceedings to offset the condemnation award. As such, the trial court's rulings present a mixed question of law and fact.

Findings of fact are generally reviewed under a clear error or abuse of discretion standard, whereas conclusions of law are generally reviewed under a de novo standard. *See Valdez v. People,* 966 P.2d 587, 598 (Colo.1998) (Kourlis, J., dissenting). When the issue before the appellate court is a mixed question of law and fact, the court may take a number of different approaches. *See id.* The court may treat the ultimate conclusion as one of fact for purposes of review and apply the clear error standard. *See id.* Alternatively, the court may conclude that a mixed question of fact and law demands de novo review. *See id.; see also Lewis v. Colorado Rockies Baseball Club, Ltd.,* 941 P.2d 266, 271 (Colo.1997). Finally, the court may review the findings of fact for clear error and still look de novo at the legal conclusions that the trial court drew from those factual findings. *See Valdez,* 966 P.2d at 598; *see also People v. Smith,* 926 P.2d

lic Highway Authority from presenting evidence of special benefits from the interchange on grounds that Tower 88 may have to "pay twice" for the interchange by imposition of the Highway Expansion Fee.
2. Whether Tower 88 received a windfall by the court of appeals decision that the exis-

tence of the Highway Expansion Fee prohibits the E–470 Public Highway Authority from presenting evidence of over $597,000 in special benefits to Tower 88's remainder as a result of E–470's construction of the 96th Avenue interchange.

186, 188 (Colo.App.1996). As the trial court made evidentiary findings of fact in support of its application of a legal principle from other jurisdictions, we find it appropriate to conduct an abuse of discretion review of the evidentiary factual findings and a de novo review of the legal conclusion. Because we hold that the trial court abused its discretion in making its factual findings supporting its legal conclusion, we need not consider de novo whether to adopt the general principle that the existence of a special assessment precludes the admission of special benefits at a condemnation proceeding.

 The Colorado Rules of Evidence strongly favor the admission of material evidence. *See People v. Quintana*, 882 P.2d 1366, 1371 (Colo.1994). A trial court has substantial discretion in deciding questions concerning the admissibility of evidence and broad discretion to determine the relevancy of evidence, its probative value and its prejudicial impact. *See People v. Huckleberry*, 768 P.2d 1235, 1242 (Colo.1989). Therefore, we will not disturb the trial court's ruling absent an abuse of discretion. *See Quintana*, 882 P.2d at 1371. A reviewing court may conclude that the trial court abused its discretion only if the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *See Hock v. New York Life Ins. Co.*, 876 P.2d 1242, 1251 (Colo.1994).

### B. Just Compensation

#### 1. Colorado Law

 Article II, section 15 of the Colorado Constitution provides, in relevant part, "Private property shall not be taken or damaged, for public or private use, without just compensation." When private property is condemned for a public purpose, the property owner is entitled to recover "an amount equal to the loss which he has suffered by reason of the taking, and nothing more." *City of Englewood v. Weist*, 184 Colo. 325, 331, 520 P.2d 120, 123 (1974). When a portion of a landowner's property is taken, just compensation includes compensation for injury to the remainder of the property as well as payment for the portion actually taken. *See La Plata Elec. Ass'n v. Cummins*, 728 P.2d 696, 698 (Colo.1986). When a portion of a tract or parcel of land is taken for highway acquisition, the compensation for the property taken and damages to the residue "*shall be reduced by the amount of any special benefits* which result from the improvement or project, but not to exceed fifty percent of the total amount of compensation to be paid for the property actually taken." § 38–1–114(2)(d), 10 C.R.S. (1999) (emphasis added). Special benefits are those which accrue "directly to the residue of the tract as a result of the construction of the improvement and which benefit directly and particularly the specific tract" of property remaining after the partial taking. *Western Slope Gas Co.*, 32 Colo.App. at 298, 512 P.2d at 644; *see also* Sackman, *supra*, § 8A.02[7].

#### 2. Trial Court Proceedings

The Authority sought to introduce evidence of special benefits accruing to the landowners' property as provided for by section 38–1–114(2)(d). Both the Authority's appraiser and the landowners' appraiser agreed that the landowners' property had been specially benefited by construction of the E–470 highway; they differed only regarding the amount of special benefits. The Authority's appraiser determined that Tower 88's remaining property was specially benefited in the amount of $1,414,700 and that 455 Company's remaining property was specially benefited in the amount of $597,000. Tower 88's appraiser calculated the special benefits to its property as $464,801 and 455 Company's appraiser determined its special benefits to be $126,295.

Before trial, the landowners moved for exclusion of any evidence of special benefits on the theory that admission of this evidence would require the landowners to "pay twice" for the same benefits because of the existence of the HEF. The landowners based this argument on authority from other jurisdictions holding that no evidence of special benefits to the remaining property resulting from the improvement can be presented in a compensation proceeding when the government has levied a "special assessment" for the same improvement. *See Oro Loma Sanitary Dist.*, 195 P.2d at 917; *Loula*, 198 N.W. at 838; *Engell*, 168 N.W.2d at 7; *Mercer*, 155

S.E.2d at 557. *See generally* Sackman, *supra*, § 8A.02[7]. The landowners argued that, as a matter of fact, the HEF charged for the same benefits resulting from the construction of the E–470 highway as those the Authority sought to introduce as an offset to the condemnation award.

In reaching its decision to exclude the special benefits evidence,[7] the trial court relied on our decision in *Bloom v. City of Fort Collins*, 784 P.2d 304 (Colo.1989), to characterize the HEF as a "special assessment" because, the court said, the HEF is "based on future benefits to the property and not on recouping the cost of building or maintaining the highway." The court further found that the HEF the landowners will have to pay is "too speculative for the commissioners to consider." We disagree with the trial court's analysis concluding that the special benefits evidence was inadmissible.

### 3. "Special Assessment" v. "Special Fee"

■ Initially, we disagree with the trial court's characterization, based on *Bloom*, of the HEF as a "special assessment." The trial court's characterization of the HEF as a "special assessment" is important because authority from other jurisdictions, relied on by the landowners, holds that only a "special assessment" for the same improvement can prevent the introduction of special benefits in a compensation proceeding.

In *Bloom* we considered whether a transportation utility fee imposed by the City of Fort Collins constituted an invalid tax in violation of the uniformity requirement of article X, section 3 of the Colorado Constitution. *Id.* at 305. In considering this question, we discussed the difference between a "special fee" and a "special assessment." *Id.* at 308–309. We described a "special fee" as "a charge imposed on persons or property for the purpose of defraying the cost of a particular governmental service." *Id.* at 308. In contrast, we stated that a "special assessment . . . must specifically benefit or enhance the value of the premises assessed in an amount at least equal to the burden imposed. The funds generated by a special assessment cannot be diverted to other purposes, since the imposition of the assessment upon a particular class of taxpayers can be justified only to the extent that such taxes are equivalent to special benefits conferred upon those taxpayers." *Id.* (internal quotation marks omitted, citations omitted).

Analyzing the transportation utility fee at issue in that case, we noted that the City of Fort Collins imposed the fee upon owners of developed lots fronting city streets "for the purpose of providing revenues for the main-

---

7. The trial court's grant of the landowners' motions resulted in the following jury instruction being given to the commissioners (the language omitted from the model instruction, CJI–Civ. 4th 36:4, is bracketed in bold):

You are also to determine the amount of compensable damages, if any, [**and the value of special benefits, if any,**] to the residue of the property owned by [Tower 88 /455 Company], and, after having determined any such damages [**or benefits**], you are to state the amount of any damages, [**and the amount of any benefits**] in your certificate.

. . . .

Any damages [**or benefits**] are to be measured by the effects the acquisition of, and the expected uses of, the property actually taken has on the reasonable market value of the residue. Any damages are to be measured by the decrease, if any, in the reasonable market value of the residue, that is, the difference between the reasonable market value of the residue before the property actually taken is acquired and the reasonable market value of the residue after the property actually taken has been acquired. Any damages which may result to the residue from what is expected to be done on land other than land actually taken from the respondent and any damages to the residue which are shared in common with the community at large are not to be considered.

[**Similarly, any benefits to the residue are to be measured by the increase, if any, in the reasonable market value of the residue due to the construction of the E–470 highway. For anything to constitute a special benefit, however, it must result directly in a benefit to the residue and be peculiar to it. Any benefits which may result to the residue but which are shared in common with the community at large are not to be considered.**]

Nothing should be considered as a factor of [**either**] damages [**or benefits**] unless you find that it increases or decreases the reasonable market value of the residue.

Any finding of damages [**or benefits**] to the residue shall not affect your determination of the value of the property taken.

[**You are to determine any damages or benefits as separate, independent items. You should not attempt to balance the two. Any adjustment or balancing must be done by the court.**]

tenance of city streets" and "to defray the cost of the service." *Id.* at 311. We declined to characterize the fee as a "special assessment" because the city ordinance did not require the revenues generated by the fee to be applied to "enhance the value of the properties assessed in an amount at least equal to the burden imposed." *Id.* at 310 (internal quotation marks omitted). We concluded that the transportation utility fee was a "special fee" and, thus, was a valid form of governmental charge within the legislative authority of the municipality. *Id.* at 310–11.

Our decision in *Bloom* does not support the trial court's characterization of the HEF as a "special assessment." Rather, the record here indicates that the HEF will be used primarily for debt reduction and to defray the costs of future operational expenses associated with increased traffic burdens. Initial projections estimate that the revenues generated by the HEF will constitute only approximately one-quarter of one percent of the total construction costs of the E–470 highway. As such, the evidence in the record more closely supports the characterization of the HEF as a "special fee" under the analysis in *Bloom.*

### 4. The Highway Expansion Fee

More importantly, we do not find the characterization of the HEF as either a "special assessment" or as a "special fee" to be determinative or necessary for the resolution of this issue. Whether the HEF is labeled as a "special fee" or as a "special assessment," the mere existence of the HEF is *not,* in and of itself, an adequate basis for excluding all evidence of special benefits for two reasons: (1) the fee is speculative; and (2) the fee does not charge for the same benefits as those the Authority sought to introduce into evidence in the condemnation proceedings.

### a. Speculative Nature

The HEF is a speculative fee that the landowners may never be charged. The HEF is a building fee that will only be collected if and when the landowners choose to develop the property. The legislative declaration to the Public Highway Authority Law reveals the General Assembly's intent to phase out *all* revenue-raising fees (such as the HEF) other than tolls paid by drivers as soon as the toll revenue is sufficient to cover debt reduction and highway maintenance expenses. *See* § 43–4–502(1)(d). As such, it cannot be said with certainty that the landowners will be subject to the HEF. If the landowners do not develop their property before the HEF is phased out, they will never be required to pay these fees.

Although we agree generally with the principle expressed by other jurisdictions that no evidence of special benefits to the remaining property resulting from the improvement can be presented in a compensation proceeding when the government has levied a special assessment for the same improvement, we find that principle inapplicable to the facts before us because of the speculative nature of the HEF. In the cases cited from other jurisdictions that have applied this general principle, either the landowner had *already been assessed* for the cost of the improvement, or it was *certain* that the landowner would be assessed for the special benefits accruing as a result of the improvement. *See Oro Loma Sanitary Dist.,* 195 P.2d at 914 (landowner had already been assessed for cost of storm drains); *Loula,* 198 N.W. at 838 (city council passed resolution to assess landowners *specifically* for the *special benefits* accruing to the property); *Engell,* 168 N.W.2d at 6, 10 (landowner had already been partly assessed for cost of sanitary sewer, storm sewer, and water main and would "no doubt" be assessed for the remaining cost); *Mercer,* 155 S.E.2d at 553 (city started proceedings to assess landowner for sewer easement before condemnation proceedings had completed). In contrast to these cases, the HEF is a temporary fee that primarily is used for debt reduction and maintenance and will only be collected from the landowners in the future if the landowners choose to develop their property before the General Assembly phases out the fee. Because of the speculative nature of this fee, its mere existence does not present the landowners with the risk present in the cases above that they will be forced to "pay twice" for the same benefits if the special benefits

evidence is allowed at the condemnation proceeding.

### b. Different Benefits

■ Even assuming that the landowners will be subject to the HEF in the future, the HEF will not charge for the same benefits as those excluded by the trial court in the condemnation proceedings. We previously have held that the special benefits determined in a condemnation proceeding are not identical to the benefits that may justify a later assessment. In *Weist* we held that a determination in a condemnation proceeding that a property owner received no special benefits was not res judicata in a later proceeding on the issue of whether the improvements benefited the landowner and justified a special assessment. *See* 184 Colo. at 332–33, 520 P.2d at 124. We specifically noted that "the 'benefit' which justifies a special assessment tax is *not* the same 'benefit' which must be calculated and deducted from a landowner's recovery in an eminent domain proceeding." *Id.* at 332, 520 P.2d at 124 (emphasis added).

Turning to the facts before us, we note that only the third component of the HEF collection methodology is arguably benefits-based. As noted above, the HEF is a development fee that is paid by landowners when they build on their property. The HEF is assessed based on three independent factors: (1) the type of development (e.g., residential, office, retail, industrial); (2) trip generation/traffic impact; and (3) proximity to the interchange. The first two factors that determine the amount of this fee are completely unrelated to the special benefits evidence the trial court excluded because the Authority's proposed special benefits evidence is solely the added value to the land resulting from the close proximity of the E–470 highway and its interchanges. Therefore, the landowners' assertion that the HEF will charge for the same benefits as the special benefits that the trial court excluded is erroneous. *See also* Sackman, *supra*, § 8A.02[7] ("[W]here a part of a tract is taken for a public use, the mere fact that the remainder may thereafter be subject to assessment does

not constitute an element of damage in a condemnation proceeding.").[8]

### III. CONCLUSION

The commissioners should have had the opportunity at trial to consider all parties' evidence of the special benefits accruing to the remaining property. The commissioners' function in a condemnation proceeding is to hear the disputed evidence and then make a factual finding as to the amount of compensation due to the landowner. *See* § 38–1–101. As noted above, the Colorado Rules of Evidence strongly favor the admission of all material evidence. *See Quintana*, 882 P.2d at 1371. As we stated in *Weist*, the property owner is entitled to recover the amount equal to the loss he has suffered by reason of the taking, and nothing more. *See* 184 Colo. at 331, 520 P.2d at 123. Both the Authority's and the landowners' appraisers agreed that construction of the E–470 highway conferred special benefits on the landowners' remaining property. By excluding this evidence of special benefits, the trial court effectively ensured that the landowners would recover an amount greater than the loss they suffered.

Therefore, we hold that the trial court abused its discretion by granting the landowners' motions in limine to exclude all evidence of special benefits accruing to the landowners' property as a result of the E–470 highway construction. Accordingly, we reverse the opinions of the court of appeals in *Tower 88 Co.* and *455 Co.* and remand for a new trial in both cases to allow all parties to present evidence of special benefits.

Justice KOURLIS, dissenting.

The Colorado Constitution requires just compensation for all property taken by the government according to its eminent domain power. *See* Colo. Const. art. II, § 15. Since the E–470 Highway Authority has the statutory right to collect a fee from the landowners based in part on the benefits that the Highway confers upon the property, the Authority may not also seek to have the value of the property reduced by those same benefits.

---

**8.** Whether the landowners are entitled to a credit against a future HEF assessment if benefits are

offset against the condemnation award is an issue we do not reach.

In my view, the majority's holding results in the landowners being subject to double payment for the same benefit. Thus, I respectfully dissent.

### I.

In granting the motion in limine in this case, the trial court concluded that the HEF was based "on the percentage of traffic and the likelihood of future development based on access and proximity to E–470 interchanges" and "on future benefits to the property." Therefore, it construed the HEF as a special assessment under *Bloom v. City of Fort Collins*, 784 P.2d 304 (Colo.1989). Based on this finding, the trial court prevented the Authority from presenting evidence of future benefits for purposes of reducing just compensation.

The court of appeals affirmed the decision of the trial court. *See E–470 Public Highway Auth. v. 455 Co.*, 983 P.2d 149, 156 (Colo.App.1999). The court explained that special benefits cannot reduce a compensation award where the remaining property can be assessed a fee for the same benefits. *See id.* at 152. In reaching this conclusion, the court of appeals indicated that the characterization of the fee does not control. *See id.* at 153. Rather, the focus should be on the benefits paid for by means of the assessment. *See id.*

I would affirm both the trial court and the court of appeals for two reasons. First, the trial court made a finding of fact that is amply supported by the record. Second, the trial court's legal analysis conforms to that required by the applicable statutes and case law.

### A.

In cases such as this, the supreme court defers to the trial court's findings of fact unless they are clearly erroneous and not supported by the record. *See Arapahoe County Bd. of Equalization v. Podoll*, 935 P.2d 14, 18 (Colo.1997). Furthermore, the trial court has considerable discretion in making decisions regarding the admissibility of evidence, and its determination will not be disturbed on appeal unless the court abused that discretion. *See Hock v. New York Life Ins. Co.* 876 P.2d 1242, 1251 (Colo.1994). "A reviewing court can conclude that the trial court abused its discretion only if the trial court's ruling is manifestly arbitrary, unreasonable, or unfair." *Id.* After reviewing the record, I agree with the court of appeals that the trial court based its findings on competent evidence, and therefore, must be upheld.

### B.

Further, I independently agree with the trial court's legal conclusions concerning the proper understanding of the HEF. Fundamentally, the question must be whether the landowners are being asked to pay twice for the same benefits: once through a deduction from just compensation awarded for the taking, and again through the statutorily authorized HEF. At its core, this determination requires a thorough examination of the HEF to decide if it is designed to siphon off some of the appreciation of the landowners' property caused by the construction of E–470 near the property.[9] The trial court asked the right question, applied the right legal standard, and reached a result that was consistent with the evidence.

### II.

### A.

Section 43–4–506(1)(j), 11 C.R.S. (1999) permits the Authority "[t]o establish, and from time to time increase or decrease, a highway expansion fee and collect such fee from persons who own property located within the boundaries of the authority." Pursu-

---

9. The Authority published a marketing document on the E–470 project which stated that "as property values in the E–470 corridor jump substantially due to construction of the highway, a portion of that increase will be 'captured' through taxes and fees paid by developers and landowners." The same publication explained that the growth spurred by E–470 will mean a 10–fold increase in property values and a significant jump in retail sales. Since E–470 will create much of these increases, it's fair that a portion be "captured" to help pay for the highway. This can happen through impact fees ... paid by developers and builders....

ant to this provision, the Authority has, in fact, established a fee that it collects upon issuance of a building permit. *See E–470 Highway Expansion Fee Collection Manual* § I (Oct.1990). To calculate the HEF, the Authority divided the E–470 corridor into four segments. *See id.* The HEF for Segment 1 "was based upon the assumption that individual properties benefit from E–470 proportional to proximity to interchanges, type of land use, and the amount of traffic to and from the land uses which utilize E–470." *Id.* § III. The formulas used for the other three segments consist of two factors. *See id.* The first factor considers the percent of traffic on E–470 in that area, and the other considers the access and proximity to E–470 interchanges and the likelihood of development of the property. *See id.*

Governments impose special assessments for particular improvements that benefit the assessed property, and the assessment cannot exceed the land's increase in value. *See Bloom,* 784 P.2d at 308. In contrast, "special fees" are levies designed to pay for the government service supplied. *See id.* at 310.

I conclude that the HEF more closely resembles a special assessment than a special fee. The HEF assessment is based in part on the land's proximity to E–470 and the nature of the development on the site. The collected fees will be used solely for purposes of constructing, financing, operating, or maintaining E–470. A portion of the fees go toward paying for E–470 itself, and other portions toward its operation and maintenance. Hence, the HEF is assessed based on enhancement to a particular property and the proceeds go toward the very structure creating the increase in value, and not toward "the cost of a particular governmental service." *Id.* at 308.

Regardless, I do not find the characterization of the HEF as either a fee or assessment to be dispositive. Certainly, these terms may have different meanings in a condemnation setting, than in *Bloom,* a tax case. The Authority calculates the fee based in part on the benefits attributed to a particular parcel, and collects it to capture some of the appreciation to the landowner's property. The Authority apparently presumes that

those sites closest to E–470 will benefit most. Appraisers use proximity to interchanges and other similar information to determine special benefits. As a result, if the compensation paid the landowners were reduced by the special benefits to the property at issue, the landowners would be subject to double payment for the same benefit.

### B.

Although the landowners may escape the HEF if they choose not to develop their land until the Authority lifts the HEF, I do not attach any significance to this issue. The General Assembly has authorized the imposition of the HEF by statute. Undoubtedly, the Authority will collect the fee if it remains in force when the land is developed.

Furthermore, both the Authority's appraiser and the landowners' appraisers valued the property according to its highest and best use. Both parties are assuming the property will be developed. In fact, the HEF is likely to reduce the market value of the land. The theoretical ability to sit on the land until the fee is eliminated, if it ever is, offers little consolation to a landowner being penalized at the time of condemnation for the benefits associated with those development rights.

### C.

The special assessment issue in *City of Englewood v. Weist,* 184 Colo. 325, 520 P.2d 120 (1974) arose in a res judicata framework. The City of Englewood condemned a portion of a parcel of land owned by Weist to widen a street and make other improvements. *See id.* at 327, 520 P.2d at 121. Instead of proving special benefits at trial in order to reduce the compensation award, the City elected to address the benefits conferred on the property at issue and other adjoining properties in a later hearing on a special assessment ordinance. *See id.* at 329, 520 P.2d at 122. Thus, the trial court concluded that the condemnation did not confer any benefits on the remaining property. *See id.*

At the subsequent hearing on the special assessment, Weist protested the propriety of any assessment on his property because the trial court had determined in the condemna-

tion proceeding that no benefits accrued to his remaining property. *See id.* Under those facts, the supreme court refused to allow Weist to receive a windfall, and held that the benefits justifying a special assessment are not the same benefits to be deducted from recovery at the time of condemnation for purposes of res judicata. *See id.* at 333, 520 P.2d at 124.

In *Weist,* as in the case on which it largely relied, *City of Baldwin Park v. Stoskus,* 8 Cal.3d 563, 105 Cal.Rptr. 325, 503 P.2d 1333 (1972), the governmental entity did not offset the condemnation award by the amount of benefit the improvement conferred because as the Supreme Court of California stated:

> Of course ... since the benefits which flow from the improvement are paid for in the form of a special assessment, the municipality may not seek to tax those benefits a second time by deducting their value from the award of severance damages in the form of "special benefits."

*City of Baldwin Park,* 105 Cal.Rptr. 325, 503 P.2d at 1337. Ultimately, in this case, under the majority's holding, the condemnation award to the landowners will be reduced by an amount that approximates benefit to the land because of the E–470 development. Then, when those landowners choose to develop their land, they will be assessed a fee for the privilege of developing and for the privilege of being adjacent to E–470. In short, they will be assessed a fee for the very same benefits that they paid for out of their condemnation award. This result conflicts with the majority of other jurisdictions, and the guidance of legal scholars. *See City of St. Louis Park v. Engell,* 283 Minn. 309, 168 N.W.2d 3, 7 (1969) (finding that special benefits shall not be offset against a compensation award where a special assessment will be imposed for the cost of improvements); 3 Julius L. Sackman, *Nichols on Eminent Domain,* § 8A.02[7] (rev.3d ed. 1999) ("Allowing both a setoff of benefits and payment of a special assessment would require the condemnee to pay twice for the same special benefits.").

### III.

Under the majority's holding, properties neighboring those at issue pay considerably less for the construction of the thoroughfare than do the condemnees. All development within the E–470 corridor must pay the HEF, albeit at varying levels, but only the condemnees pay not only the fee, but also suffer the deduction from their condemnation award. They thus pay an additional charge for the special benefits to their remaining land. As the Supreme Court of Minnesota eloquently opined:

> if a special assessment were to be levied for those same special benefits, the landowner who had property taken might well be required to pay an amount in excess of that required of landowners who did not lose land in the condemnation proceedings. Under the circumstances the cost of the improvements would be disproportionately assessed because a person whose land was actually taken and who had suffered damages as a result of that taking would be required to pay more for the improvements to the area than his neighbor whose land was not taken. Such a rule would penalize the individual owner whose property has been taken.

*City of St. Louis Park,* 168 N.W.2d at 10. I would adopt this rationale to prevent an inequitable result.

Because I would defer to the trial court's findings and conclusions, and would find that under these circumstances an offset to the compensation award for special benefits creates a situation where the landowners could be required to pay twice for the same benefit, I respectfully dissent.

I am authorized to state that Justice BENDER joins in this dissent.