Judge TAUBMAN concurring in part and dissenting in part.
¶ 159 Although I agree with most of the majority opinion, I respectfully dissent with regard to part IV, in which the majority reverses the probate court's approval of the corporate governance plan. In my view, Robert Goodyear, Jr., the personal representative, acted within the terms of the will and within the scope of his statutory duties, in creating two classes of stock to divide the assets of the Berenergy Corporation. I similarly conclude that the probate court properly approved that part of the distribution plan. Finally, I conclude that even if the trial court erred, the error was harmless because neither Goodyear nor the four brothers presented evidence showing any actual inequality in the value of the shares to be distributed to the four brothers compared to the shares to be distributed to Mrs. Beren's children.
I. Standard of Review
¶ 160 I agree with Goodyear that whether the corporate governance structure improperly diminished the value of the four brothers' interest in Berenergy is a mixed question of fact and law. We review the probate court's findings of fact for clear error, and we review its legal conclusions de novo. See E-470 Public Highway Auth. v. 455 Co., 3 P.3d 18, 22-23 (Colo.2000).
II. Applicable Law
¶ 161 As the majority notes elsewhere in its opinion, personal representatives are vested with broad powers to carry out their duties under the Probate Code. Fry v. Dist. Court, 653 P.2d 1135, 1137 (Colo.1982). Specifically, under section 15-12-703(1), C.R.S.2012, a personal representative is charged with distributing the estate of a decedent under the terms of the will and the Code "as expeditiously and efficiently as is consistent with the best interests of the estate." In addition, a personal representative "shall use the authority conferred upon him by this code, the terms of the will, if any, and any order in proceedings to which he is party for the best interests of successors to the estate." Id.
*514 ¶ 162 Because Mrs. Beren took her elective share against the will and disclaimed interest in the testamentary marital trust, she is treated as if she predeceased decedent, with the result that the residuary estate must be divided equally among the seven children under Article 1-2.3 of the will. See § 15-11-801(4), C.R.S.2012. I agree with the majority that the value of each child's interest should be based on fair market value. See § 15-12-906(2), C.R.S.2012.
III. Analysis
¶ 163 Here, Goodyear's distribution plan provided that the estate should be distributed pro rata to the seven children as residual beneficiaries, "subject to a corporate governance structure intended to assure that neither of what has turned out to be the two 'sides' of the family is placed in a minority position." Under the distribution plan, the four sons would each own 1,000 shares of class A stock, while Mrs. Beren's children would each own 1,000 shares of class B stock. In its September 2, 2010 order, the probate court approved Goodyear's plan for distribution of the estate's assets, including the corporate governance plan.
¶ 164 Neither Goodyear nor any of the children presented any evidence indicating that the value of the four brothers' shares is less than the value of the shares of Miriam's children, or that any difference in value was other than de minimis.
¶ 165 Instead, on appeal, the four brothers argue, and the majority agrees, that the probate court erred as a matter of law in establishing the two classes of stock. I disagree.
¶ 166 In my view, Goodyear acted in accordance with his statutory obligations under section 15-12-703(1) to distribute the assets of the estate under the will "as expeditiously and efficiently as is consistent with the best interests of the estate." His actions were consistent with the Code's provisions that it be liberally construed to, among other things, "promote a speedy and efficient system for settling the estate of the decedent and making distribution to his successors." § 15-10-102(2)(c), C.R.S.2012; see also § 15-10-103, C.R.S.2012 (principles of law and equity supplement Code's provisions).
¶ 167 Under these provisions, Goodyear could create two classes of Berenergy stock to prevent Miriam's children from being in a minority position. This action was appropriate in light of the protracted, continuing divisions between the four sons and Mrs. Beren's children in litigating virtually every aspect of the distribution of the estate for more than fifteen years. Under these circumstances, the probate court acted well within its authority in approving Goodyear's corporate governance plan.
¶ 168 I disagree with the majority that Goodyear was obligated to present evidence that the corporate governance plan did not create two classes of stock with different values. Rather, I agree with his view that "where shares of common stock are not part of either a control block or a minority block, there is typically no value accorded to their associated voting rights."
¶ 169 In any event, I conclude that even if the probate court erred in approving the corporate governance plan, any error was harmless. See C.R.C.P. 61 (courts should ignore harmless errors that do not affect the substantial rights of the parties). Given the litigiousness of the parties to this case, one may wonder why the four brothers did not present evidence to establish that their class A shares were worth less than the class B shares allocated to Mrs. Beren's children.
¶ 170 In the absence of evidence presented by any party on this issue, I would conclude that any error by the probate court in approving the corporate governance structure was harmless.
¶ 171 For the above reasons, I would affirm the corporate governance plan approved by the probate court.